LINNEA HUGGINS, Plaintiff-Appellee and Cross-Appellant, v. THE VILLAGE OF BISHOP HILL, Defendant-Appellant and Cross-Appellee (Ann Marie Stodgel, d/b/a Antik Affar, *et al.*, Defendants and Cross-Appellees).

Third District   No. 3—97—0044

Opinion filed January 28, 1998.

Mark A. Woollums and Peter J. Thill, both of Betty, Neuman & McMahon, of Davenport, Iowa, for appellant.

Don J. McRae, Eugene L. Stockton, and Sharon Pearse Waugh, all of Don J. McRae & Associates, of Kewanee, for appellee.

William Bush, of Carlin, Hellstrom & Bittner, of Davenport, Iowa, for cross-appellees Ann Marie Stodgel and Martin Stodgel.

JUSTICE SLATER delivered the opinion of the court:

Plaintiff Linnea Huggins was injured when she fell down a gravel-covered slope located outside of a business owned by defendants Ann Marie and Martin Stodgel. In addition to the Stodgels, plaintiff sued defendant Village of Bishop Hill, the purported owner of the sloped area. The jury returned a verdict in favor of plaintiff and against Bishop Hill in the amount of $47,000. The jury also found that the amount of plaintiff's comparative fault was 50%, resulting in a net award of $23,500. The Stodgels were not found liable. On appeal, Bishop Hill contends: (1) that it is immune from suit; (2) that plaintiff was not a permitted or intended user of the area where she fell; (3) that the village did not owe plaintiff a duty because the slope was an open and obvious danger; and (4) that the plaintiff's conduct bars her recovery. Plaintiff has cross-appealed, contending that: (1) the jury's finding that plaintiff was 50% at fault was a compromise and against the manifest weight of the evidence; and (2) the trial court should have entered a judgment notwithstanding the verdict against the Stodgels. We affirm.

## Facts

The Stodgels own a shop called the Antik Affar and an adjoining restaurant/tea room called P.L. Johnsons. In 1992, the Village of Bishop Hill, in conjunction with the Illinois Department of Transportation (IDOT), engaged in a road improvement project. As part of the project, the street in front of the Stodgels' business was widened, which created a sloped area between the street and the sidewalk. The slope was described by witnesses as two to three or four to five feet in height and covered with gravel or white rock. Ann Stodgel told James Robertson, the mayor of Bishop Hill, that she was concerned about the slope and its effect on her customers' ability to safely enter and exit her business. Ann wanted to build steps on the slope, and Robertson told her she would need permission from the village board, as he believed the slope was village property. Roland Krause, the village clerk, also testified that he thought that the slope and sidewalk were village property, although he did not have a survey or other records to support his belief. Ann Stodgel got permission from the village board and she and her husband built steps leading from the street to the sidewalk in front of the Antik Affar. Ann testified that they built the steps eight feet wide, three feet wider than the entrance to their business, so that customers would see the stairs and use them. Ann believed that the sidewalk in front of her business was village property, and the Stodgels did not maintain it or the sloped area.

On May 11, 1993, 81-year-old plaintiff Linnea Huggins went to Bishop Hill with her sister and daughter. They stopped at the Antik Affar, and plaintiff stayed to look at some quilts after her sister and daughter had left. When plaintiff left the store, her sister was sitting outside and her daughter, who had been at another store, was in the street approaching the gravel slope near the steps. Although plaintiff was aware of the steps, she stepped off the sidewalk onto the gravel slope and slipped and fell, fracturing her ankle. Plaintiff's testimony as to whether she intentionally stepped onto the slope or slipped from the sidewalk onto the slope was equivocal.

Plaintiff's complaint alleged that the defendants were negligent in: (1) constructing or maintaining the sloped area by covering it with loose gravel while knowing that pedestrians would walk on it; (2) constructing or maintaining the sidewalk without a railing to prevent pedestrians from stepping from the sidewalk to the slope; and (3) failing to warn of the danger of stepping from the sidewalk to the slope. As indicated above, the jury found that the village was liable but that the Stodgels were not. The jury also found that plaintiff was 50% at fault.

## Analysis

■ Defendant Village of Bishop Hill first contends that it is immune under section 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/3—103(a) (West 1992)). That section provides:

> "A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. *The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe.*" (Emphasis added.) 745 ILCS 10/3—103(a) (West 1992).

■ The village argues that the gist of plaintiff's claim is that the improvements to the street created the slope and, therefore, it is immune under section 3—103(a). Defendant ignores, however, the statutory language emphasized above. It is well settled that although a municipality is not liable for failing to improve public property, once it does make improvements it is liable if the improvement creates an unreasonably dangerous condition. See *Herman v. Will Township*, 284 Ill. App. 3d 53, 671 N.E.2d 1141 (1996); *Santelli v. City of Chicago*,

222 Ill. App. 3d 862, 584 N.E.2d 456 (1991). The jury's finding in favor of plaintiff indicates that it found that the slope was not reasonably safe and we cannot say, as a matter of law, that this finding was erroneous. Therefore, the Village of Bishop Hill is not immune under section 3—103(a) of the Act.

■ The village next contends that it is not liable because it did not have notice of the allegedly dangerous condition of the slope. We disagree. Section 3—102 of the Act provides in part:

"[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, *and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition.*" (Emphasis added.) 745 ILCS 10/3—102(a) (West 1992).

■ In this case, James Robertson, the mayor of Bishop Hill, testified that Ann Stodgel told him she was concerned about the slope and its effect on the ability of her customers to safely enter and exit her business. Ann then went before the village board and sought and obtained permission to build steps on the slope. Under the circumstances, we believe that the village had ample notice that the slope constituted a potential danger to persons such as plaintiff.

The village also maintains that plaintiff cannot prevail because she was not an "intended and permitted" user of the slope. Defendant analogizes plaintiff's use of the slope to that of a pedestrian crossing in the middle of the street. We disagree.

■ The general rule regarding the duty of a municipality to maintain its streets in a reasonably safe condition is that, because pedestrians are not intended users of streets, a municipality does not owe a duty of care to pedestrians who attempt to cross a street outside the crosswalks. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 651 N.E.2d 1115 (1995). However, in *Marshall v. City of Centralia*, 143 Ill. 2d 1, 570 N.E.2d 315 (1991), the plaintiff was injured when he stepped into an open sewer on a parkway owned by the defendant. The parkway was described as a grass-covered area between the sidewalk and the street. The supreme court concluded that the plaintiff was an intended and permitted user of the parkway and therefore the defendant had a duty to maintain the parkway in a reasonably safe condition. *Marshall*, 143 Ill. 2d 1, 570 N.E.2d 315. We believe that the gravel-covered slope at issue in this case is akin to the grass-covered

parkway in *Marshall*, and therefore plaintiff was an intended and permitted user of the slope.

The village further contends that the gravel-covered slope presented an open and obvious danger and therefore defendant did not owe plaintiff a duty of care. We disagree.

■ Persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 665 N.E.2d 826 (1996). The law generally assumes that persons who encounter such common conditions as fire, height, and bodies of water will take care to avoid any danger inherent in such conditions; the open and obvious nature of the condition itself confers warning and therefore the risk of harm is considered slight. *Bucheleres*, 171 Ill. 2d 435, 665 N.E.2d 826. However, the existence of a known or obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of the landowner. *Bucheleres*, 171 Ill. 2d 435, 665 N.E.2d 826. "Rather, the existence of a duty in the face of a known or obvious condition is subject to the same analysis of duty as is necessary in every other claim of negligence." *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 155, 598 N.E.2d 337, 344 (1992). The relevant factors in determining the existence of a duty include the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant; the fact that a dangerous condition is known or obvious affects the foreseeability and likelihood of injury. See *Bucheleres*, 171 Ill. 2d 435, 665 N.E.2d 826; *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 566 N.E.2d 239 (1990).

■ We first consider whether the danger presented by the gravel-covered slope was known or obvious. "Known" includes not only knowledge of the existence of the condition, but also appreciation of the danger it involves. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable person in the position of plaintiff, exercising ordinary perception, intelligence and judgment. *Deibert*, 141 Ill. 2d 430, 566 N.E.2d 239.

We believe that while the risk presented by the slope was obvious, the *degree* of danger was not as apparent. Based on the photographs in the record, it appears that the rock or gravel obscured, to a certain extent, the true angle of the slope. "[I]f a danger is concealed or latent, rather than open and obvious, the likelihood of injury increases because people will not be as readily aware of such latent danger." *Bucheleres*, 171 Ill. 2d at 456, 665 N.E.2d at 836. Even a "seemingly innocuous incline" can become unreasonably

dangerous when combined with other conditions impairing traction. *Ralls*, 233 Ill. App. 3d at 156, 598 N.E.2d at 345. In this case we find that the *actual* danger presented by the slope was greater than the *apparent* danger and to that extent it was foreseeable that a person in plaintiff's position would be injured. Similarly, the likelihood of injury also weighs in favor of imposing a duty on defendant due to the deceptive nature of the risk involved. On the other hand, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on defendant are not severe. We hold that the obviousness of the danger presented by the slope did not relieve the Village of Bishop Hill of its duty of care.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

BRESLIN and HOMER, JJ., concur.