HELEN BARNHISEL, Plaintiff-Appellant, v. THE VILLAGE OF OAK PARK, Defendant-Appellee.

First District (2nd Division)   No. 1—98—4574

Opinion filed December 30, 1999.

Lawrence H. Hyman & Associates, of Chicago (Lawrence H. Hyman, of counsel), for appellant.

Judge, James & Dutton, Ltd., of Park Ridge (Jay S. Judge, Kathryn James Anderlik, and Thomas J. Keevers, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

The plaintiff, Helen Barnhisel, instituted the instant personal injury action against the defendant, Village of Oak Park (the Village), seeking recovery for injuries she sustained when she tripped on a crack in a sidewalk and stumbled into a tree cut-out area adjacent to the sidewalk. The trial court granted summary judgment to the Village, finding the Village owed no duty of care because the crack in the sidewalk was *de minimis* and because the tree cut-out area, which it characterized as a "parkway," did not create a condition in the nature of "a pitfall, trap, or snare." Upon the denial of plaintiff's motion to reconsider, the plaintiff appeals, raising the following issues: (1) whether the tree cut-out area was a "parkway" to which the plaintiff was a permitted and intended user; and (2) whether the Village owed a duty of reasonable care with respect to the tree cut-out area.[1] For

---

[1] In her reply brief, the plaintiff argues that the Village is potentially liable under section 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—103(a) (West 1996)) in that it adopted a plan or design of construction of, or an improvement to, public property that created a condition that was not reasonably safe. The plaintiff has waived this contention by raising it for the first time in her reply brief, which she obtained leave of court to file on the day of oral argument. See 155 Ill. 2d R. 341(e)(7) ("[p]oints not argued are waived and shall not be raised in the reply brief").

the reasons discussed below, we affirm the grant of summary judgment in favor of the Village.

## BACKGROUND FACTS

The plaintiff testified in her deposition that, at approximately 8:30 a.m. on March 1, 1997, she was walking down the sidewalk on Oak Park Avenue in the Village of Oak Park. She had walked down that street an estimated six times before. While walking, she caught the tip of her left shoe on what she described to be a piece of raised and broken concrete, which she did not see. She stated that her right foot then went down into the tree cut-out area, causing her to fall forward on both knees and land partially on the sidewalk and partially in the grass and dirt of the tree cut-out area. The plaintiff also stated that, as a result of her injuries, she was required to undergo two surgeries on her right knee. She sustained medical bills totaling more than $26,000.

During her deposition, the plaintiff marked an ''X'' on a photograph depicting the area where she tripped. The plaintiff estimated the differential between the respective levels of the two pieces of concrete to be three-quarters of an inch to one inch. The photograph tendered to the court showed the tree cut-out area to be a relatively narrow strip. It ran adjacent to the street, from the curb past the midpoint of the sidewalk, extending approximately two-thirds of the width of the sidewalk, leaving approximately one-third of the width of the sidewalk for pedestrian traffic. The plaintiff's complaint alleged that the tree cut-out area was approximately $2^1/_4$ inches lower than the sidewalk and measured 72 inches long and 67 inches wide.[2]

Attached to the Village's motion for summary judgment were the affidavits of two Village employees, Alex Alexandro, a risk manager, and James Budrick, Village engineer. Both averred in their affidavits that, on April 18, 1997, they examined the sidewalk where plaintiff's injury occurred. Each stated that the alleged crack upon which the plaintiff initially tripped was the "line" or "margin" between two slabs of concrete and that there was no difference in the height of the slabs.

Based upon the above, the Village moved for summary judgment, contending that even assuming plaintiff's testimony that the sidewalk was cracked and contained a height differential of three-quarters of an inch to one inch was true, the crack was *de minimis* and, thus, nonde-

---

[2]Plaintiff confirmed during her deposition the measurements of the cut-out area as set forth in her complaint. It would appear that the min-u-script of her deposition contains an error in that it refers to the measurement in the complaint as being 17 inches long by 67 inches wide.

fective and nonactionable. *Warner v. City of Chicago*, 72 Ill. 2d 100, 378 N.E.2d 502 (1978) (stating 1¹/₈-inch rise between sidewalk sections nonactionable but remanding case to jury given other factors relative to condition of sidewalk); *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 608 N.E.2d 920 (1993) (1⁷/₈-inch height differential in sidewalk nonactionable as a matter of law).

In response, the plaintiff argued that the cause of her fall was not the differential between the sidewalk slabs but, rather, the differential between the sidewalk and the tree cut-out area. In reply, the Village argued that it was entitled to summary judgment based upon section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—102 (West 1996)). It argued that the tree cut-out area was a parkway; that the plaintiff was not an intended user of the parkway; and that, therefore, the Village did not owe a duty of care to the plaintiff. The Village also argued that the tree cut-out area was open and obvious and was not a trap, snare, or pitfall.

In her surreply, the plaintiff argued that she was an intended user of the sidewalk and that the tree cut-out area was part of the sidewalk. She also argued that, even if the tree cut-out area was a parkway, the Village owed a duty to maintain it because pedestrians are intended users of parkways and are reasonably expected to walk upon them. The trial court granted summary judgment to the Village, specifically finding, at the hearing on plaintiff's motion for reconsideration,[3] that the Village owed no duty to fix the crack in the sidewalk because it was *de minimis* and that it owed no duty to fix the tree cut-out area because, under *Marshall v. City of Centralia*, 143 Ill. 2d 1, 570 N.E.2d 315 (1991), it was a parkway and contained no pitfalls, traps, or snares.

## DISCUSSION

■ Summary judgment is proper when the pleadings, depositions, admissions of record and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1998); *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992); *Alcan United, Inc. v. West Bend Mutual Insurance Co.*, 303 Ill. App. 3d 72, 707 N.E.2d 687 (1999). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. *In re Estate of Herwig*, 237 Ill. App. 3d 737, 604 N.E.2d 1164 (1992). Appellate

---

[3]The plaintiff indicates in her brief that summary judgment was entered in her counsel's absence due to a scheduling conflict. Pursuant to the court's suggestion, the plaintiff filed a motion to reconsider. It is from the transcript of that hearing that the circuit court's findings were memorialized.

review of an order granting summary judgment is *de novo. E.g., American Country Insurance Co. v. Kraemer Brothers, Inc.*, 298 Ill. App. 3d 805, 699 N.E.2d 1056 (1998); *Apostal v. Oliveri Construction Co.*, 287 Ill. App. 3d 675, 678 N.E.2d 756 (1997).

■ The Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 *et seq.* (West 1996)) provides that a local public entity has a duty to exercise ordinary care to maintain its property in a reasonably safe condition. That duty extends to people who exercise ordinary care and for whom the entity intends and permits the use of the property "in the manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3—102(a) (West 1996). See also *Marshall*, 143 Ill. 2d at 6, 570 N.E.2d at 317, quoting *Curtis v. County of Cook*, 98 Ill. 2d 158, 164-65, 456 N.E.2d 116, 119 (1983) (stating section 3—102(a) of the Tort Immunity Act " 'evinces a legislative intent to extend a duty of care only to those persons by whom the local government intended the property to be used' ").

In the instant case, the parties do not dispute, for purposes of summary judgment, the manner in which the plaintiff's injuries occurred. As the trial court stated at the hearing on plaintiff's motion for reconsideration, the plaintiff:

> "tripped with her left foot on a crack in the sidewalk, and in an effort to catch herself, her right foot went into this parkway area and there was an unevenness such that her right foot, as she was falling, could not catch her and so she continued to fall."

The parties' dispute centers upon a determination of the duty owed by the Village to the plaintiff with respect to the tree cut-out area. This issue involves initial determinations of whether the cut-out area can be characterized as a parkway or sidewalk and whether the plaintiff was an intended user of that area. Each of these issues involves a question of law which can be decided by summary judgment. See *Marshall*, 143 Ill. 2d at 6, 570 N.E.2d at 317 (question of whether municipality owed plaintiff duty of care is question of law to be determined by the court). For the reasons explained below, we find the tree cut-out area was a parkway, that the plaintiff was an intended user of the cut-out area, and that the duty owed by the Village to the plaintiff was not breached.

■ A "parkway" is defined in Webster's Third New International Dictionary as "a landscaped strip of land paralleling or running in the center of a thoroughfare." See Webster's Third New International Dictionary 1642 (1993). The tree cut-out area in the instant case ran adjacent to the street and was composed of dirt, grass, and a tree. See *Marshall*, 143 Ill. 2d at 9-10, 570 N.E.2d at 318. There can be no ques-

tion that the cut-out area was intended to beautify the thoroughfare to which it was appended.

The plaintiff argues that the tree cut-out area is not a parkway because it is a small area cut out of the sidewalk and remains "within the boundaries of a public sidewalk." We would agree that, because of its small size and location, the demarcation of the cut-out area as a parkway is not as obvious as with respect to the more typical parkway that runs the full length of the sidewalk. We must nevertheless find the balance between its characteristics as a parkway and its characteristics as a sidewalk overwhelmingly favors it being characterized as a parkway. Functionally, the cut-out area is more like a parkway than a sidewalk. As discussed, like many parkways it is surrounded by the sidewalk and the curb that runs adjacent to the street. So, too, as with many parkways, the cut-out area is landscaped with dirt, grass, and a tree rather than pavement and cement. See Webster's Third New International Dictionary 1642 (1993) (defining "parkway" as "a landscaped strip of land paralleling *** a thoroughfare"). See also *Marshall*, 143 Ill. 2d at 4, 570 N.E.2d at 317 (parkway consisting of dirt and grass between sidewalk and street). *Cf.*, *Strawder v. City of Chicago*, 294 Ill. App. 3d 399, 690 N.E.2d 640 (1998) (treating gravel and dirt area between street and sidewalk as parkway). This aspect of the cut out makes it most unlike a sidewalk. We note that the cut-out area actually breaks the traffic flow of the adjacent sidewalk and defeats its primary purpose as a pedestrian thoroughfare. Finally, although smaller than the more typical parkway that runs the length of a block, the cut-out area in the instant case has permitted uses much like larger parkways, such as to allow pedestrians to access parking meters and enter cars parked at the curb, to allow pedestrians to stand upon them so that others can pass on the sidewalk, and to allow pedestrians access to cut the grass and to rake the leaves found within the perimeter of the cut out. See *Marshall*, 143 Ill. 2d at 10, 570 N.E.2d at 319 (setting forth historical uses of parkway similar to that of sidewalk). While there is no question that the cut-out area would be used by pedestrians for access purposes, much in the same way that pedestrians would use the adjacent sidewalk, that fact would not require a finding that the cut-out area was a sidewalk rather than a parkway given its other characteristics discussed above.

In addition to finding the cut-out area is a parkway, we also find that the plaintiff was an intended user of the cut-out area. Support for this conclusion can be found in *Marshall*, 143 Ill. 2d 1, 570 N.E.2d 315. In *Marshall*, the plaintiff was injured when he stepped into an open sewer manhole on a parkway owned by the defendant municipality. The defendant conceded that the plaintiff was a permitted user of

the parkway but argued that the plaintiff was not an intended user of the parkway. The defendant contended that the parkway was "intended to be used as 'an area of beautification for trees, and so forth.'" *Marshall*, 143 Ill. 2d at 6, 570 N.E.2d at 317-18. The plaintiff and an *amicus curiae* contended that plaintiff was an intended user because "people customarily use parkways to: cut the lawn, plant shrubbery, gain access to parked cars, or stand on while others are permitted to pass by on the sidewalk." *Marshall*, 143 Ill. 2d at 6-7, 570 N.E.2d at 318.

The *Marshall* court concluded that the plaintiff was an intended and permitted user of the parkway, stating:

> "We are not persuaded by defendant's argument that parkways are areas of beauty that were constructed with the intention that they only be looked at and not walked upon. It is this court's opinion that parkways, while beautifying the street, are also intended for the limited use of pedestrians, such as the plaintiff in the instant case." *Marshall*, 143 Ill. 2d at 9-10, 570 N.E.2d at 319.

*Cf. Huggins v. Village of Bishop Hill*, 294 Ill. App. 3d 466, 470-71, 690 N.E.2d 656, 659 (1998) (finding plaintiff was intended and permitted user of a gravel-covered slope between street and sidewalk; court treated slope as being "akin" to grass-covered parkway in *Marshall*). Here, as in *Marshall* and as discussed above, the tree cut-out area allowed access to cars parked adjacent to the curb, allowed passage of slower-moving pedestrians, and allowed pedestrian access for purposes of cutting the grass and raking leaves found within the cut-out perimeter. These uses make pedestrians, such as the plaintiff, intended users. See *Marshall*, 143 Ill. 2d at 10, 570 N.E.2d at 319 (discussing historical uses of parkways by pedestrians).

■ Since we find the tree cut-out area is a parkway, and since we find the plaintiff, a pedestrian, was nevertheless an intended and permitted user, we must now determine the extent of the Village's duty of care with respect to that parkway. In making this determination, we note that, even with regard to intended users, the duty of care with respect to parkways is not synonymous with the duty of care owed with respect to sidewalks. As stated in *Marshall*:

> "Pedestrians who leave the sidewalk cannot assume that parkways are free of defects or undulations as they otherwise could when traveling on the sidewalk. Sidewalks are generally made of cement, while parkways are composed of sod and earth and are therefore more susceptible to weather damage caused by rain and snow. [Citation.] Municipalities cannot be held liable for parkway conditions which are customary, even though such conditions may be slightly dangerous. [Citation.] 'However, a city has no right to maintain

anything in the nature of a pitfall, trap, snare[,] or other like obstruction whereby the traveler, in yielding to the impulse of the average person to cut across a corner in a hurry, may be injured ***.' " *Marshall*, 143 Ill. 2d at 10-11, 570 N.E.2d at 319-20, quoting *Castro v. Sutter Creek Union High School District*, 25 Cal. App. 2d 372, 380, 77 P.2d 509, 514 (1938).

In the instant case, the plaintiff argues that the Village had a duty to maintain the tree cut-out area in a reasonably safe condition and that this duty extended beyond the prevention of pitfalls, traps, or snares. She further contends that Village owed a duty of reasonable care because it created and maintained the tree cut-out area in an unreasonably dangerous condition because of the height differential between the cut out and the adjacent sidewalk and because the tree cut-out area significantly decreased the width of the sidewalk, making it foreseeable that a pedestrian might lose his or her balance and be forced into the cut-out area. We disagree with all of plaintiff's contentions.

As discussed in *Marshall*, a municipality's duty of care with respect to parkways is not as stringent as its duty of care with respect to sidewalks. A municipality's duty of reasonable care does not extend to customary parkway conditions, even where such conditions could be characterized as slightly dangerous. *Marshall*, 143 Ill. 2d at 11, 570 N.E.2d at 319-20 (stating, "[m]unicipalities cannot be held liable for parkway conditions which are customary, even though such conditions may be slightly dangerous"). A municipality's duty does extend, however, to protecting pedestrians from unreasonably dangerous conditions " 'in the nature of a pitfall, trap, snare[,] or other like obstruction,' " such as an open manhole. *Marshall*, 143 Ill. 2d at 11, 570 N.E.2d at 320, quoting *Castro*, 25 Cal. App. 2d at 380, 77 P.2d at 514.

■ Here, the parkway was neither unreasonably dangerous because of the height differential between it and the sidewalk nor unreasonably dangerous because it significantly decreased the width of the sidewalk adjacent to it. With respect to the height differential, the plaintiff testified in her deposition that the distance between the sidewalk and the parkway was approximately 2¼ inches. Such a height differential would be customary for parkways containing dirt, grass, and trees to prevent seepage of the dirt upon the sidewalk from rain and other weather conditions that could make the adjacent sidewalk slippery. The height differential did not create an unreasonably dangerous condition or obstruction for which the Village would owe a duty of care; it prevented a dangerous condition from occurring.

In reaching this conclusion, we reject plaintiff's reliance on *Repinski v. Jubilee Oil Co.*, 85 Ill. App. 3d 15, 405 N.E.2d 1383 (1980).

There, the court considered the issue of whether a hole in a sidewalk near a gas station driveway, 1¹/₂ inches deep and 1¹/₂ feet wide, was unreasonably dangerous. The court believed that the variance could be actionable and remanded the matter to the jury to determine that issue. *Repinski* is distinguishable from the instant case because it did not involve a height differential between a sidewalk and a parkway. It involved a hole in a sidewalk for which the duty of care is more stringent. See *Marshall*, 143 Ill. 2d at 10, 570 N.E.2d at 319 ("[p]edestrians who leave the sidewalk cannot assume that parkways are free of defects or undulations as they otherwise could when traveling on the sidewalk"). As discussed above, the duty of care with respect to parkways does not extend to customary conditions, such as the height differential in the instant case, even where those conditions may be slightly dangerous.

We next reject plaintiff's contention that the parkway created an unreasonably dangerous condition because it significantly decreased the width of the adjacent sidewalk. The photograph depicting the area where the plaintiff fell shows that approximately two-thirds of the sidewalk was cut away to allow for creation of the tree cut out. Notwithstanding that loss of sidewalk, there is ample space for pedestrian traffic by two persons. Moreover, even assuming, one pedestrian desired to step onto the cut-out area to allow passage by another, he or she could safely do so by walking in the dirt and grass area of the cut out or by walking on the property of the homes that border the sidewalk. As discussed, the height differential between these areas and the sidewalk is slight and would not pose a dangerous obstruction in the nature of a pitfall, trap, snare, or the like. See *Marshall*, 143 Ill. 2d at 11, 570 N.E.2d at 320, quoting *Castro*, 25 Cal. App. 2d at 380, 77 P.2d at 514.[4]

The availability of another route for pedestrian traffic that is not

---

[4]Arguably, even if the narrowing of the sidewalk was considered to be unreasonably dangerous, the plaintiff could not satisfy the proximate cause element to her negligence action against the Village. See *Hoiseth v. Northeast Illinois Regional Commuter R.R. Corp.*, 205 Ill. App. 3d 323, 328-29, 562 N.E.2d 602, 606 (1990) ("[i]n order to support a judgment for a plaintiff based on the design of a sloping surface, a plaintiff must present evidence of the dangerous nature of the slope, that the slope was the proximate cause of the plaintiff's injuries[,] and that the land owner had notice of the defect"). "The proximate cause of an injury is a cause 'which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause.' " *Gilmore v. Stanmar, Inc.*, 261 Ill. App. 3d 651, 658, 633 N.E.2d 985, 991 (1994), quoting *Novander v. City of Morris*, 181 Ill. App. 3d 1076, 1078, 537 N.E.2d 1146, 1147 (1989). While proximate cause is generally a question of fact, it

actionably dangerous distinguishes the instant case from the cases of *Donovan v. Raschke*, 106 Ill. App. 2d 366, 246 N.E.2d 110 (1969), *Sweat v. Aircraft & Diesel Equipment Corp.*, 335 Ill. App. 177, 81 N.E.2d 8 (1948), and *Huggins*, 294 Ill. App. 3d 466, 690 N.E.2d 656, cited by the plaintiff. In *Donovan*, the sidewalk alleged to have been unreasonably dangerous was significantly blocked by construction materials, including bags of mortar, a mortar box, and a wheelbarrow. The plaintiff tripped when a roll of wire mesh fell in front of her as she was walking past. The pedestrian's ability to walk on the sidewalk was completely stymied once the wire mesh roll fell in front of her. The *Donovan* court did not, however, find that the sidewalk was unreasonably dangerous; rather, it held that a question of fact existed as to whether the building owner could anticipate the pedestrian's injury given the condition of the sidewalk. *Donovan*, 106 Ill. App. 2d at 371, 246 N.E.2d at 113. Moreover, even if *Donovan* could be construed as finding a condition of unreasonable danger under its facts, no such construction is required in the instant case. Here, unlike in *Donovan*, the sidewalk adjacent to the cut-out area was not entirely blocked, and it allowed for unobstructed pedestrian traffic.

*Sweat* also is of no avail to the plaintiff. In *Sweat*, the defendant building owner barricaded the sidewalk because of falling cement coping and left a narrow passage of 18 to 24 inches for pedestrian traffic. In affirming the jury verdict in favor of the plaintiff, who was injured when he fell on the sidewalk, the court found the sidewalk dangerous by reason of "rough, slippery[,] and uneven concrete footing which was difficult to see in the dark." *Sweat*, 335 Ill. App. at 183, 81 N.E.2d at 11. The basis for liability was not the mere narrowing of the sidewalk but the rough and slippery condition of that narrowed sidewalk. Here, unlike in *Sweat*, there is no evidence that the sidewalk adjacent to the cut-out area was rough, slippery, or uneven. At most, the sidewalk contained a crack which, as discussed above, was *de minimis* and nonactionable.

Plaintiff's reliance on *Huggins* is misplaced as well. There, as in *Sweat*, a verdict in favor of the plaintiff/pedestrian was affirmed on

---

may be determined as a matter of law "where it is apparent from the undisputed facts that only one conclusion can be drawn." *Lindenmier v. City of Rockford*, 156 Ill. App. 3d 76, 90, 508 N.E.2d 1201, 1211 (1987); accord *Bickerman v. Wosik*, 245 Ill. App. 3d 436, 439, 614 N.E.2d 551, 553 (1993). Here, although we do not premise our disposition on this factor, it can be argued that the plaintiff is not within the class of persons to whom the duty was breached by narrowing the sidewalk. The plaintiff does not contend that the narrowing of the sidewalk caused her to stumble and fall. She attributed the cause of her fall to the alleged crack in the sidewalk.

appeal. The facts showed that the Village, as part of a road improvement project, widened a street and, in so doing, created a sloped area between the street and the sidewalk that it covered with gravel and rock. The court affirmed the verdict, finding that the sloped area was unreasonably dangerous because the rock and gravel obscured the true angle of the slope, making the likelihood of injury greater. *Huggins*, 294 Ill. App. 3d at 471-72, 690 N.E.2d at 660. Here, unlike in *Huggins*, the tree cut-out area cannot be considered to be a latent or obscured danger.

■ Having concluded that the cut-out area is not unreasonably dangerous because of the height differential between it and the sidewalk or because it eliminates a two-thirds portion of the adjacent sidewalk, plaintiff's assertion that the Village owed a duty of care because it created the cut-out area must, in turn, fail. It is the absence of an unreasonably dangerous condition that distinguishes *Herman v. Will Township*, 284 Ill. App. 3d 53, 671 N.E.2d 1141 (1996), and *Santelli v. City of Chicago*, 222 Ill. App. 3d 862, 584 N.E.2d 456 (1991), the final two cases cited by the plaintiff. In *Herman*, the township made improvements to a road but left up to four inches of uncompacted, coarse, loose gravel on the roadway. The plaintiff's three experts testified that the road was not adequately compacted, was unstable and unsafe, was a " 'very treacherous surface' " where it would be easy to skid out of control, had zero compaction, and was "unreasonably dangerous." *Herman*, 284 Ill. App. 3d at 57-58, 671 N.E.2d at 1144. Affirming the jury verdict for the plaintiff, the court rejected the township's contention that it owed no duty. The court found that the township was liable for undertaking a public improvement and creating an unreasonably dangerous condition. *Herman*, 284 Ill. App. 3d at 59, 671 N.E.2d at 1145. In *Santelli*, the court held that the plaintiff's complaint against the city stated a cause of action for negligence. In that complaint, the plaintiff alleged that the city was negligent in failing to remove a raised median strip and in failing to maintain an "S" curve in a reasonably safe condition. *Santelli*, 222 Ill. App. 3d at 866-68, 584 N.E.2d at 458-59. The court held that the city was not immune from liability where it created a hazardous condition. *Santelli*, 222 Ill. App. 3d at 868, 584 N.E.2d at 459. Since *Santelli* presented a pleading issue, evidentiary facts establishing the unreasonably dangerous condition were absent from the case. Here, as discussed, neither the height differential between the sidewalk and the cut-out area nor the decreased width of the sidewalk created an unreasonably dangerous condition, thereby making *Herman* and *Santelli* inapposite.[5]

---

[5]As another basis to affirm summary judgment in its favor, the Village

For the foregoing reasons, we affirm the summary judgment entered in favor of the Village.

Affirmed.

McNULTY and McBRIDE, JJ., concur.

---

argues that it did not owe the plaintiff a duty of care because the tree cut-out area was open and obvious. It cites numerous cases, none of which are dispositive of the instant appeal. Ordinarily, a person who owns, occupies, controls, or maintains land is not required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 665 N.E.2d 826 (1996); *Huggins*, 294 Ill. App. 3d at 471, 690 N.E.2d at 659. However, current case law holds that the existence of an open and obvious condition is not a *per se* bar to the finding of a legal duty. *Bucheleres*, 171 Ill. 2d at 449, 665 N.E.2d at 833; *Ward v. K mart Corp.*, 136 Ill. 2d 132, 149-51, 554 N.E.2d 223, 231-32 (1990); *Menough v. Woodfield Gardens*, 296 Ill. App. 3d 244, 247, 694 N.E.2d 1038, 1041 (1998). But see 740 ILCS 130/2 (West 1998) (as amended effective March 9, 1995, section 2 of the Premises Liability Act eliminates duty to warn or protect entrant from open and obvious conditions on the premises). As set forth in *Ward*:

> "[R]eason to expect harm to visitors from known or obvious dangers may arise 'where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. *** In such cases the fact that the danger is known, or is obvious, is important to determining whether the invitee is to be charged with contributory negligence, or assumption of risk. It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.' " *Ward*, 136 Ill. 2d at 149-50, 554 N.E.2d at 231, quoting Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965).

When the potential for distraction from an open and obvious condition exists, the duty analysis requires additional consideration of the foreseeability of plaintiff's distraction and resulting injury as well as the magnitude of the burden on the defendant to exercise reasonable care. *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 438-39, 566 N.E.2d 239, 243 (1990); *Ward*, 136 Ill. 2d at 156, 554 N.E.2d at 234. Here, argument could be made that it was foreseeable that a plaintiff could be distracted from appreciating the open and obvious condition of the cut-out area in the sidewalk. See *Deibert*, 141 Ill. 2d at 438-39, 566 N.E.2d at 243 (finding defendant should have reasonably anticipated that plaintiff would have been distracted from five-inch rut in ground). The question then would become whether the burden on the defendant would have been prohibitive. The record before us is silent on this issue.