**Scott GRESSER, Plaintiff,**

v.

**UNION PACIFIC RAILROAD CO., Defendant.**

**No. 99–1223.**

United States District Court, C.D. Illinois.

Jan. 22, 2001.

---

Patrick J O'Hara, Cavanagh & O'Hara, Springfield, IL, for Scott Gresser, plaintiff.

Theodore J Williams, Jr, Michael B. Hunter, Armstrong Teasdale LLP, St Louis, MO, for Union Pacific Railroad Company, defendant.

## ORDER

MIHM, District Judge.

This matter is before the Court on Defendant, Union Pacific Railroad Company's ("Union Pacific"), Motion for Summary Judgment. For the reasons stated herein, the Motion is GRANTED.

### Jurisdiction and Applicable Law

This action was properly removed from the Circuit Court of McLean County, Illinois, under 28 U.S.C. § 1441, *et seq.* This Court has original jurisdiction on the basis of diversity pursuant to 28 U.S.C. § 1332(a). Plaintiff, Scott Gresser ("Gresser"), was at the time of filing and, is now, a citizen of Michigan. Union Pacific was at the time of filing and, is now, incorporated under the laws of Delaware with its principal place of business in Omaha, Nebraska. Gresser seeks judgment against Union Pacific in an amount in excess of $75,000, exclusive of interest and costs. This action arose from injuries Gresser suffered in Bloomington–Normal, Illinois, from Union Pacific's alleged negligent maintenance of a railroad crosswalk. Therefore, under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, this Court is required to apply the substantive law of Illinois.

### Factual Background

This Court must first address those facts which are disputed between the parties. Throughout this litigation, the parties appeared to agree that Gresser's position was that he tripped and fell on the lip of the crosswalk, the lip being created by the asphalt overlay meeting the concrete crosswalk. On October 27, 2000, this Court held a hearing to address concerns over Gresser's response to Union Pacific's Statement of Undisputed Facts. Specifically, Union Pacific stated that, "Union Pacific's expert, August Domel, Ph.D., has taken measurements of the lip and determined that, at its highest point, the lip does not exceed five-eighths (⅝) of an inch in height." (Def.Stat. of Undisputed Facts, ¶ 36). Gresser responded by stating, "Plaintiff admits that Defendant's expert has taken measurements and made certain representations regarding said measurements. Plaintiff further asserts that such expert is subject to cross-examination regarding his techniques and his conclusions." (Plt.Response, ¶ 36).

It was not clear to this Court whether Gresser was admitting or denying the statement. Further, the Court was concerned that Gresser had taken the position that he could wait until trial to present facts which show there is a genuine issue of material fact. Gresser explained during the hearing that he was not disputing the measurement. However, he injected that it was not only the lip which caused him to trip, but all the defective conditions in the crosswalk, including a crack in the crosswalk and the abutting concrete slab east of the asphalt. This Court allowed the parties to submit supplemental briefs on the issue of what caused Gresser to trip. Gresser fails to direct this Court to any evidence other than evidence that he tripped on the lip. His own deposition testimony supports such a finding. The relevant portions of Gresser's deposition reads:

> Q. Okay. Can you put an X on this photograph where you tripped?
>
> A. All's (sic) I know it was this general area here, but specifically which spot I don't know.
>
> Q. Okay. Can you circle the general area where you fell. All right. Now you've just circled the area and it runs from one side of the sidewalk to the other of a lip that's created by the asphalt, is that correct? [1]

1. *See* Court Exhibit 1 (attached), originally submitted as Exhibit H to Defendant Union Pacific Railroad Company's Motion for Summary Judgment.

A. Yes.

Q. All right. And is that the only thing that caused you to trip, that lip right there?

A. I believe so, yes.

(Dep. of Scott Gresser, p. 53).

Q. So as you sit here today you can't tell me that that (sic) asphalt lip is what caused you to fall, can you?

Mr. O'Hara: Objection—

A. Yes, I can tell you that.

Mr. O'Hara: Wait a minute, that's argumentative. He concluded that he tripped there because that's where he tripped. He's entitled to that conclusion. The question's argumentative and I object.

Mr. Hunter: Okay.

(Dep. of Scott Gresser, pp. 64–65).

These statements by Gresser are consistent with the deposition of Gresser's friend, Spencer Rogers. Rogers stated:

Q. All right. Now, can you tell me whether you actually saw him fall?

A. Yes, I did.

Q. You did. Did you see what caused him to fall?

A: Yes, I did.

Q. Okay. And what was that?

A. He stumbled on there's like a black going up toward the track about ten foot away, there's like a black asphalt type on top of the sidewalk, and it heads up to the tracks, but there's like a gap, and he caught his foot on a gap and stumbled on it head first.

Q. Okay. And the gap we'll call it, is it actually like a little lip where the—

A. It's like a lip, yeah.

Q. Where the asphalt's on top of the sidewalk?

A. Yeah, there's like an inch, it don't come down and touch the sidewalk, there's like an inch or something.

(Dep. of Spencer Rogers, p. 14).

Finally, Gresser admitted the following undisputed fact from Defendant Union Pacific Railroad Company's Statement of Undisputed Facts:

Plaintiff claims that he tripped on a lip in the sidewalk where the asphalt met the concrete, and fell face forward towards the passing train.

(Dft.Stat. of Undisputed Facts, ¶ 22, and Plt. Response, ¶ 22).

This Court previously ruled that Gresser had taken the position that it was the lip which caused him to trip. (See Order of July 28, 2000.) Gresser has provided this Court with nothing that proves otherwise. Accordingly, this Court will consider, as an undisputed fact, that Gresser is bound by his previous assertions that it was the lip, the area created by the asphalt overlay meeting the concrete, which that caused him to trip. Consequently, the other claimed defects are irrelevant to the issue before this court because those conditions did not cause Gresser to trip.

The following facts are not in dispute unless a dispute is specifically noted. On August 21, 1997, Gresser traveled on an Amtrak train from his home in Holland, Michigan, to Bloomington–Normal, Illinois. While on the train and during layovers, Gresser consumed several alcoholic beverages. The train arrived at the Bloomington–Normal station at approximately 6:00 p.m. Upon arrival at the Bloomington–Normal Amtrak station, Gresser met with his friends, Ryan Beck, Todd Rogers, Spencer Rogers, and Joe Polen. Gresser and his friends decided to go for drinks at Rocky's, a nearby bar.

In order to get to Rocky's, Gresser and his friends had to cross over the train tracks using a 10–foot–wide bike path/crosswalk ("crosswalk") that runs north to south across the railroad tracks. The tracks were used for both freight trains and passenger trains. Rocky's was located on the north side of the tracks.

On the north side of the tracks, there were a number of features that are relevant to this case. First, the crosswalk had overlaid asphalt that extended from the tracks outward approximately six to seven feet. At the point where the overlaying

asphalt ended and the concrete portion of the crosswalk began, a "lip" was created because of the difference in elevation. Union Pacific's expert witness asserts that this lip measures ⅝ of an inch at its highest point. Gresser asserts that Union Pacific installed and maintained the asphalt crosswalk which was located on a right-of-way of Union Pacific. Union Pacific concedes that the crosswalk was located within its right-of-way but indicates it was installed by the previous owner.

Second, there were two yellow poles on the crosswalk located approximately 15 feet north of the tracks. The poles are known as "bollards" and served the purpose of keeping vehicles off the crosswalk.

Finally, there was a yellow line that was located on the cement that runs parallel to the railroad tracks. This line is apparently similar to those typically located in railroad stations (and other mass transit stations) to warn of a safe distance to remain from the tracks.

Once they were at the bar, Gresser and his friends remained there for about 30 minutes. Gresser asserts that he drank, at most, two beers while at the bar. Gresser and his friends left the bar at approximately 6:30 p.m. and began to walk back in the direction of the Amtrak station on the crosswalk north of the tracks mentioned above. Gresser was walking in front of the group and having a discussion with Beck. At some point as Gresser approached the railroad tracks, he observed a passing train. There is some dispute as the distance at which Gresser noticed the passing train. Union Pacific contends that Gresser noticed the train approximately 10 to 15 feet from the tracks, while Gresser asserts that he did not know how far away he was when he noticed it.

Approximately six to seven feet before reaching the tracks, Gresser allegedly tripped and fell on the crosswalk.[2] There is also some dispute as to how Gresser ended up under the train. Union Pacific states that Gresser attempted to push himself up and back from the train when a ladder from the passing train struck him in the head and spun him underneath the train. Gresser objects to this characterization of his deposition, in that he did not use the phrases "push[ing] himself up" or "a ladder on a passing train." Gresser does concede that he was struck by some object right before he went under the train.

On August 1, 2000, Union Pacific filed a Motion for Summary Judgment.

This Order follows.

### Summary Judgment Standard

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden

---

**2.** Gresser's assertion that he tripped on the lip is extremely tenuous. Although this Court must view the evidence in the light most favorable to Gresser, this Court parenthetically notes that there are a number of affidavits of independent witnesses that support a different account of the accident. *See* Kathryn Fish Affidavit; Jack Wineinger Affidavit; David Kerber Affidavit; Sharon Wineinger Affidavit. The independent witnesses explain that the injury occurred when Gresser walked up next to the train and bent over as if to look under the train. While bent over, he was struck in the head by a step or some object on or under the train. The impact caused him to hit the ground, and his leg was across the track. Two witnesses explained that it appeared that Gresser was bent over to put something on the tracks.

of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 106 S.Ct. at 2511; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

### *Discussion*

■ Under Illinois law, in order for a plaintiff to recover in a negligence action, the plaintiff must allege and prove that the defendant owed the plaintiff a duty, that the duty was breached by the defendant, and that the breach was the proximate cause of the injuries suffered by the plaintiff. *First Springfield Bank & Trust v. Galman*, 188 Ill.2d 252, 242 Ill.Dec. 113, 720 N.E.2d 1068, 1071 (Ill.1999). Gresser claims that Union Pacific owed a duty to him to maintain the crosswalk used by pedestrians to cross over the railroad tracks in a reasonably safe condition, free from the "lip" defect. It is an issue for the trial court to determine whether or not a duty exists. Accordingly, a jury question results only when the defect in the crosswalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it while exercising reasonable care for his own safety. *Gleason v. City of Chicago*, 190 Ill.App.3d 1068, 138 Ill.Dec. 351, 547 N.E.2d 518, 518 (1st Dist. 1989); *Hartung v. Maple Investment and Development Corporation*, 243 Ill.App.3d 811, 184 Ill.Dec. 9, 612 N.E.2d 885, 888 (2nd Dist.1993). Put another way, a jury question is present when "not all reasonable minds would agree that [the defect] [is] so slight ... that no danger to pedestrians could reasonably be foreseen." *Warner v. City of Chicago*, 72 Ill.2d 100, 19 Ill.Dec. 1, 378 N.E.2d 502, 503 (1978).

■ Union Pacific contends that the complained-of defect is not actionable under the *de minimis* rule. Illinois law suggests that *de minimis* defects in sidewalks are not actionable because the economic burdens imposed on a defendant to repair every slight defect is far too great. *See Gillock v. City of Springfield*, 268 Ill. App.3d 455, 206 Ill.Dec. 63, 644 N.E.2d 831 (4th Dist.1994). The *de minimis* rule is traditionally applied only to municipalities; however, this rule has been expanded and now provides to private owners and possessors of land the same protection. See *Hartung*, 243 Ill.App.3d 811, 184 Ill.Dec. 9, 612 N.E.2d 885. As a result, Union Pacific has a duty to keep its sidewalk in a reasonably safe condition for the accommodation of travelers and pedestrians, but it is not required to foresee and provide against every possible danger or accident that may occur. *Walter v. City of Rockford*, 332 Ill.App. 243, 74 N.E.2d 903, 906 (2nd Dist. 1947).

■ Summary judgment is an appropriate method to dispose of a case if the Court finds that a defect in a crosswalk is too *de minimis* to be actionable. *See Birck v. City of Quincy*, 241 Ill.App.3d 119, 181 Ill.Dec. 669, 608 N.E.2d 920 (4th Dist. 1993); *Gleason v. City of Chicago*, 190 Ill.App.3d 1068, 138 Ill.Dec. 351, 547 N.E.2d 518; *Hartung*, 243 Ill.App.3d 811, 184 Ill.Dec. 9, 612 N.E.2d 885. There is no fixed mathematical measurement to determine whether defects caused by unevenness in sidewalks are actionable, and courts are cautioned that such determination must be made by examining the particular facts of each case. *See id.* This Court recognizes that it is a tenuous task to determine whether a defect is so slight that it is a question of law for the court to decide, or one of fact for the jury to decide.

■ Obviously, the height or level of unevenness of the defect must be consid-

ered in determining whether a particular defect is actionable. Illinois law suggests that defects under two inches, absent other circumstances, are not actionable. (1 ⅞ inch elevation between two concrete slabs of concrete not actionable, *Birck*, 608 N.E.2d at 923; ¼ crack in sidewalk not actionable, *Gleason*, 547 N.E.2d at 519; ¾ inch to 1 inch differential between two pieces of concrete not actionable, *Barnhisel v. Village of Oak Park*, 311 Ill.App.3d 108, 243 Ill. Dec. 885, 724 N.E.2d 194, 200 (1999); ½ inch difference in elevation between slabs of concrete in a sidewalk not actionable, *Cooks v. United States*, 815 F.2d 34 (7th Cir.1987); ¾ to 1 inch elevation between slabs of pavement on sidewalk not actionable, *Walter v. City of Rockford*, 332 Ill. App. 243, 74 N.E.2d 903, 906 (Ill.App. 2nd Dist. 1947)). The complained-of defect in this case measures ⅝ of an inch at its highest point. Clearly, this defect, absent other circumstances, would not be actionable.

However, this Court is directed to examine all of the surrounding circumstances. In *Warner*, the Supreme Court of Illinois found that the locale of the defect can be useful in determining whether a defect is actionable. *Warner*, 19 Ill.Dec. 1, 378 N.E.2d at 504 (examination of 1 ⅛ inch elevation on snow-covered public sidewalk near plaintiff's residence). Specifically, the court explained:

> An unacceptable height variation in one location such as a busy commercial area where pedestrians must be constantly alert to avoid bumping into one another, may be nonactionable in another area, such as a residential one.

*Id.*

Other cases suggest that the anticipated volume of traffic should be considered. *See Birck*, 181 Ill.Dec. 669, 608 N.E.2d at 923.

Here, the defect is located six to seven feet from a railroad track, and the crosswalk is used by pedestrians to cross over the tracks. The proximity of the railroad tracks is a factor that must be considered because of the potential for serious harm. However, even given this proximity, this Court cannot find a duty on the part of Union Pacific to maintain the crosswalk in question in a "lip free" condition.

■■■ To allow this minor defect to be actionable because of its location, even with regular and sometimes heavy pedestrian traffic and proximity to railroad tracks, would undermine the purpose of the *de minimis* rule. Municipalities (and individuals) would be responsible to eradicate every minor defect that could possibly result in an individual tripping into the street. This is the exact burden the *de minimis* rule is intended to prevent. This matter does not hinge so much on the proximity of the tracks, but rather, the foreseeability of the event that occurred. "The imposition of a legal duty requires more than a mere possibility of occurrence." *Hartung*, 184 Ill.Dec. 9, 612 N.E.2d at 889. "Not what actually happened, but what the reasonably prudent person would have foreseen as likely to happen, is the key to the question of reasonableness." *Id.* To impose the duty on Union Pacific necessary for Gresser to establish liability in this case, Union Pacific would have had to reasonably foresee that a person could/would approach a moving train within six or seven feet, pass two yellow "bollards" in the middle of the crosswalk, then trip and fall over a 5/8" lip with such velocity that he/she could/would fall under the train. Put simply, this possible factual scenario is not reasonably foreseeable. (*See* Court Exhibit 1, attached). No reasonable jury could so find.

The difficulty is that the defect here is one which is routinely encountered on busy sidewalks throughout our cities and towns. Union Pacific's duty is to exercise ordinary care to keep the crosswalk reasonably safe for persons exercising ordinary care, not to keep it in perfect condition. As a matter of law, it did not breach that duty.

**Conclusion**

Under the factual circumstances of this case, no reasonable jury could find that a 5/8" defect located 6 or 7 feet from a railroad track was sufficient to give rise to a reasonable expectation of danger of a

pedestrian tripping on the crosswalk and falling under the train. Gresser's claim is barred by the *de minimis* defect rule.

Therefore, Defendant's Motion for Summary Judgment [20–1] is GRANTED. This case is now TERMINATED.