VINCENT L. HERMAN, Plaintiff-Appellee, v. WILL TOWNSHIP, Defendant-Appellant.

Third District   No. 3—96—0017

Opinion filed October 3, 1996.

54

Kristine A. Karlin, Jay S. Judge, and Kathryn James Anderlik (argued), all of Judge & James, Ltd., of Park Ridge, for appellant.

Alan Marcus, of Chapekis, Marcus, Allen & Chapekis and Michael W. Rathsack (argued), both of Chicago, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Will Township (Township), appeals from a judgment entered in favor of the plaintiff, Vincent Herman. A jury awarded the plaintiff damages for injuries he suffered in an accident on a gravel road that had recently been improved by the Township.

On appeal, the Township first argues that the judgment should be reversed. The Township contends that it was immune from liability pursuant to sections 2—109, 2—201 and 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2—109, 2—201, 3—103(a) (West 1994)). In the alternative, the Township argues that it is entitled to a new trial because: (1) the plaintiff was allowed to introduce evidence that the Township did not post warning signs; (2) the plaintiff was al-

lowed to introduce a photograph of a different gravel road; (3) the trial court erroneously gave a missing witness instruction; and (4) the trial court allowed the plaintiff's expert, Paul Box, to render an opinion concerning the condition of the gravel road.

After carefully reviewing the record, we conclude that the Township was not immune from liability pursuant to the Tort Immunity Act. We further conclude that the Township is not entitled to a new trial. As a result, we affirm.

## FACTS

On July 25, 1991, the 65-year-old plaintiff was driving his Honda Elite 250 (moped) west on Eagle Lake Road. He had never driven on Eagle Lake Road before, and, when he started driving on the road, it was paved. Because it was an unposted rural road, the speed limit was 55 miles per hour. The plaintiff was traveling about 45 miles per hour when he saw a rise in the road and slowed down to 42 or 43 miles per hour. The plaintiff saw a color change in the road but could not tell whether the pavement turned into a gravel road until he was about 150 feet from where the pavement changed to gravel. After he crossed Crawford Road, the plaintiff drove onto the north lane of the gravel road. He tried braking, but his front wheel sank into the gravel and his moped went down. As a consequence, the plaintiff suffered five broken ribs, a punctured lung, a fractured collar bone, a fractured scapula and a herniated disc in his neck. Moreover, he had to have exploratory surgery because of internal bleeding, and his spleen was removed.

On December 31, 1991, the plaintiff filed a complaint against Will Township. The plaintiff alleged that the Township made improvements to Eagle Lake Road and caused the road to become unsafe by "leaving up to four (4) inches of uncompacted, coarse, loose gravel on the roadway." The Township attempted to have the complaint dismissed based upon its claim of tort immunity. The trial court denied the motion. The Township also filed affirmative defenses, again claiming tort immunity and also claiming the plaintiff was guilty of contributory or comparative negligence because he failed to keep a proper lookout and failed to reduce speed to avoid the accident.

A trial took place in October 1994. On October 19, 1994, the jury returned a verdict in which it found for the plaintiff but awarded no damages. The trial court later granted the plaintiff's motion for a new trial. Will Township filed a petition for leave to appeal the new trial order. This court denied the petition.

The second trial began on July 24, 1995. Ronald Werner, the Township's road commissioner, testified that Eagle Lake Road was

paved east of Crawford Road and was gravel west of Crawford Road. During the spring of 1991, Township employees began improving a one-mile section of the gravel road west of Crawford Road and east of Will Center Road. The project was approved by the Illinois Department of Transportation (IDOT) and was completed in accordance with IDOT specifications. The specifications did not include any requirements for compaction of the gravel.

The Township improved the road by widening it from 17 feet to 20 feet and putting on a new 10-inch layer of gravel. Township employees laid the new gravel in 3- to $3^1/2$-inch layers using two gravel trucks. The project specifications required the Township to work from the end closest to the gravel quarry, so the employees started laying down gravel at Will Center Road. They began at the south lane of the road. Each layer was compacted by driving the gravel trucks over it. Also, a grader was used to level and compact each layer. The project was completed on July 21, 1991, four days prior to the plaintiff's accident. The north lane just west of Crawford Road was completed last. Werner admitted the trucks did not drive over the final layers as many times as the first layers. He said that it was possible there was as much as $3^1/2$ inches of loose gravel on the north lane of the road. However, he testified that when he drove over the road on July 21, 1991, he thought it was sufficiently compacted.

Three experts testified for the plaintiff. Ronald Palmieri is a licensed engineer who specializes in pavement evaluation, design and construction. He examined the road on August 8, 1991. Palmieri tested a spot on the north side of the road that he stated was representative of the first 50 feet west of Crawford Road. He testified that most of this section of the road had four inches of loose gravel, although the loose gravel ranged from one to four inches. Palmieri testified that a gravel road must be adequately compacted so that drivers can have a stable surface to drive over smoothly. He testified that, in his opinion, the road in question was not adequately compacted. As a consequence, Palmieri found the road to be unstable and unsafe.

Paul Box, a traffic engineering consultant, went to the scene on August 16, 1991. He testified that he saw several inches of loose gravel on the road. He said the road had a "very treacherous surface." He testified that it would be very easy to skid out of control because of the loose gravel on the road.

Gerald Dresselhouse, a civil engineer, testified that he was a consultant and had previously been a county road commissioner in Michigan. He went to observe the scene of the accident in April 1994. He testified that, based upon his review of various documents and

photographs, the surface by the intersection with Crawford Road had essentially zero compaction at the top one to four inches of the road. In his opinion, he found the road to be unreasonably dangerous.

A photograph taken by Dresselhouse in April 1994 was shown to the jury over the Township's objection. Dresselhouse testified it was "an enlargement of a photograph that [he] had taken of a gravel road in the area of our accident site here that depicts what an adequately compacted and adequately maintained surface should look like." He said the photograph showed a different portion of Eagle Lake Road.

All three experts were allowed to testify that there were no warning signs posted at the site of the accident. They all testified that, without any warning signs, a driver unfamiliar with the road could not observe that the pavement turned into gravel until it was too late to react to avoid an accident. Each time this type of testimony was presented by the plaintiff, the trial court gave a limiting instruction that the evidence was only being admitted on the issue of the plaintiff's own negligence and not on the issue of the Township's negligence.

On August 1, 1995, the jury returned a verdict in favor of the plaintiff, set damages at $509,000, and determined that the plaintiff was 40% negligent. Judgment was entered on the verdict in the sum of $305,400. Following the denial of its post-trial motion, the Township filed a timely notice of appeal.

## TORT IMMUNITY

The Township points out that "no statute, code, rule, regulation or standard in Illinois required a specific level of compaction" on the road at issue. The Township contends that it had no duty to compact the gravel and the amount of compaction was a discretionary act on the part of Werner, the road commissioner. The Township claims it is entitled to immunity for Werner's discretionary actions under sections 2—109 and 2—201 of the Tort Immunity Act. It also argues that it is entitled to immunity under section 3—103 of the Tort Immunity Act because the plan for improving the road was approved by IDOT. We disagree with the Township's position.

■ Section 3—102(a) of the Tort Immunity Act codifies the common law duty of a local public body to maintain its property, including roads, in a reasonably safe condition. 745 ILCS 3—102(a) (West 1994); *Wagner v. City of Chicago*, 166 Ill. 2d 144, 152, 651 N.E.2d 1120, 1124 (1995). Numerous cases, many of which have been cited and relied upon by the Township, hold that this common law duty to maintain does not include a duty to undertake improvements to public property. See, *e.g.*, *Kennell v. Clayton Township*, 239 Ill. App. 3d

634, 640-42, 606 N.E.2d 812, 816-18 (1992); *Havens v. Harris Township*, 175 Ill. App. 3d 768, 771, 530 N.E.2d 284, 285 (1988); *Ross v. City of Chicago*, 168 Ill. App. 3d 83, 89, 522 N.E.2d 215, 218 (1988). The decision to make these improvements is discretionary (*Snyder v. Curran Township*, 167 Ill. 2d 466, 474-75, 657 N.E.2d 988, 993 (1995)), and local public entities are not liable for failing to undertake public improvements of the roadways (*Hull v. City of Chicago*, 236 Ill. App. 3d 405, 406, 602 N.E.2d 1300, 1301 (1992)). Accordingly, this court, in *Havens*, stated that a "township has no common law duty to widen roads, smooth gravel, erect signs, or mow weeds." *Havens*, 175 Ill. App. 3d at 771, 530 N.E.2d at 285.

■ However, it is well settled that the local public body's general duty to maintain its property in a reasonably safe manner encompasses a specific duty to make public improvements, once undertaken, in a reasonably safe manner. *Wagner v. City of Chicago*, 254 Ill. App. 3d 842, 851, 626 N.E.2d 1227, 1234 (1993), *aff'd*, 166 Ill. 2d 144, 651 N.E.2d 1120 (1995); *Havens*, 175 Ill. App. 3d at 771, 530 N.E.2d at 285. Our supreme court recently stated in *Snyder* that "once the decision to perform the work is made, it must be done with reasonable care *and in a nonnegligent manner*." (Emphasis added.) *Snyder*, 167 Ill. 2d at 474-75, 657 N.E.2d at 993. A local public body is liable in tort when it undertakes a public improvement and the improvement creates an unreasonably dangerous condition. *Hull*, 236 Ill. App. 3d at 406, 602 N.E.2d at 130; *Santelli v. City of Chicago*, 222 Ill. App. 3d 862, 867, 584 N.E.2d 456, 459 (1991); see also *Snyder*, 167 Ill. 2d at 475, 657 N.E.2d at 993.

■ Based upon this well-settled case law, we summarily reject the Township's contention that it had "no duty." Because the Township undertook to improve a portion of Eagle Lake Road, it had a duty to proceed with reasonable care. In addition, it is well settled that as soon as a local public entity begins to carry out its plan to make a public improvement, it acts ministerially. *Bonnell v. Regional Board of School Trustees*, 258 Ill. App. 3d 485, 490, 630 N.E.2d 547, 550 (1994); *Eck v. McHenry County Public Building Comm'n*, 237 Ill. App. 3d 755, 762-63, 604 N.E.2d 1109, 1115 (1992); see also *Snyder*, 167 Ill. 2d at 474, 657 N.E.2d at 993. A local public entity does not have discretionary immunity for ministerial acts. See *Snyder*, 167 Ill. 2d at 473, 657 N.E.2d at 992. For this reason, the Township is not entitled to discretionary immunity pursuant to sections 2—109 and 2—201 of the Tort Immunity Act.

■ We also conclude that the Township is not entitled to immunity under section 3—103(a) of the Act. This section of the Act states that a local public entity is immune from liability "for an

injury *caused* by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement." (Emphasis added.) 745 ILCS 10/3—103(a) (West 1994). The section also provides that the "local public entity *is* liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that is not reasonably safe." (Emphasis added.) 745 ILCS 10/3—103(a) (West 1994).

The Township claims immunity because the gravel road was constructed based upon specifications approved by IDOT. However, section 3—103(a) immunity has been held inapplicable unless the injuries result from the adoption of a plan or design. *Eck*, 237 Ill. App. 3d at 764, 604 N.E.2d at 1117. Here, the plaintiff's claim was that his injuries were caused by the unsafe condition of the road after the work was done. The plaintiff has *never* claimed that his injuries were caused by any defect in the plan or design of the road. In addition, by its own terms, section 3—103(a) does not provide immunity where "it appears from its use" that a local public entity has created a condition that is not reasonably safe. 745 ILCS 10/3—103(a) (West 1994); see *Cole v. City of East Peoria*, 201 Ill. App. 3d 756, 758, 761, 559 N.E.2d 769, 771, 773 (1990).

The Township strenuously argues that this exception to immunity does not apply in this case. The Township notes that it received no complaints or notification of other accidents in the four days between the completion of the project and the plaintiff's accident. The Township concludes that this lack of notice means that it is entitled to immunity. We do not agree.

Here, Werner observed the road after the improvement was completed. He admitted that it was possible there were 3¹/₂ inches of loose gravel left on the road. The plaintiff's experts testified that the road was not adequately compacted and was unsafe. Because the evidence showed that the Township created a condition that was not reasonably safe, and had notice of the condition, the Township was not entitled to immunity under section 3—103(a) of the Tort Immunity Act.

## TRIAL ERRORS

The Township next contends that it is entitled to a new trial because of four specified trial errors. We do not agree.

■ The Township initially claims that the trial court abused its discretion when it allowed witnesses to testify there were no warning signs posted on the road. The Township insists the testimony was improper because it cannot be held liable for failing to post warning

signs under section 3—104 of the Tort Immunity Act. We agree with the Township's claim that section 3—104 of the Tort Immunity Act provides absolute immunity for a local public entity's failure to initially provide traffic signals and signs. 745 ILCS 10/3—104 (West 1994); *West v. Kirkham*, 147 Ill. 2d 1, 6-8, 588 N.E.2d 1104, 1106-08 (1992).

In this case, however, the trial court allowed the evidence to be presented *only* as it pertained to the Township's affirmative defenses that the plaintiff was negligent. Each time a witness testified regarding the fact there were no warning signs to alert the plaintiff, the trial court gave a limiting instruction that the testimony could not be considered on the issue of the Township's negligence.

Evidentiary rulings properly rest within the sound discretion of the trial court. *Smith v. Black & Decker (U.S.), Inc.*, 272 Ill. App. 3d 451, 455, 650 N.E.2d 1108, 1112-13 (1995). Absent an abuse of discretion resulting in prejudice to the party objecting, those rulings will not be disturbed on appeal. *Smith*, 272 Ill. App. 3d at 455, 650 N.E.2d at 1112-13. Evidence is relevant when it tends to prove a fact in controversy or renders a matter in dispute more or less probable. *Smith*, 272 Ill. App. 3d at 458, 650 N.E.2d at 1114-15.

In the instant case, the challenged testimony was relevant to the issue of whether the plaintiff should have been alerted to the change from the solid pavement to gravel and whether the plaintiff should have been able to slow down to avoid the accident. Also, the Township was not prejudiced by the admission of the evidence because the trial court gave an appropriate limiting instruction. Accordingly, we find no abuse of the trial court's discretion.

■ Second, the Township argues that the trial court abused its discretion when it allowed the photograph of a different portion of Eagle Lake Road to be introduced into evidence. This photograph was shown to the jury during the testimony of the plaintiff's expert witnesses. It was not admitted into evidence and was not published to the jury. Furthermore, the photograph did not go into the jury room during deliberations. The trial court stated that it was allowing the photograph to be shown to the jury only for demonstrative purposes.

Demonstrative evidence has no probative value in itself, but serves as a visual aid to the jury in comprehending the verbal testimony of a witness. *Cisarik v. Palos Community Hospital*, 144 Ill. 2d 339, 341-42, 579 N.E.2d 873, 874 (1991). It is within the trial court's discretion to determine whether a party may present demonstrative evidence to clarify an expert's testimony. *Continental Concrete Pipe Corp. v. Century Road Builders, Inc.*, 195 Ill. App. 3d 1, 13, 552 N.E.2d

1032, 1040 (1990). The trial court's determination regarding the admissibility of demonstrative evidence will not be disturbed by a reviewing court absent a clear abuse of discretion. *Elder v. Finney*, 256 Ill. App. 3d 424, 427, 628 N.E.2d 393, 395 (1993).

Here, the trial court decided that the photograph could be used as demonstrative evidence and should be shown to the jury to illustrate the experts' testimony regarding the adequate compaction of a gravel road. We conclude that the trial court did not abuse its discretion in allowing the photograph to be used for this limited purpose.

We additionally note that the Township has supplemented the record on appeal with the original, unenlarged photograph. We have carefully studied the photograph and find that it does not illustrate much of anything and certainly could not be viewed as prejudicial. From our review of the photograph and the record on appeal, we conclude that the showing of the photograph to the jury did not prejudice the Township in any way.

■ Third, the Township argues that reversible error occurred when the trial court gave a "missing witness" instruction. The Township used an expert witness, Mel Larsen, who testified at the first trial. Larsen was listed by the Township as a witness for the second trial. Prior to the second trial, the Township was allowed a continuance based upon Larsen's unavailability. However, during the second trial, the Township did not call Larsen as a witness. The Township did not notify the plaintiff prior to trial that Larsen would not be testifying, and the plaintiff's attorney referred to Larsen's expected expert testimony in his opening statement to the jury.

When Larsen did not testify, the plaintiff requested a "missing witness" instruction. The plaintiff argued that Larsen's credibility was impeached during the first trial when it was shown there was no basis for Larsen's opinions. The trial court gave the plaintiff's instruction over the Township's objection.

The Township argues that it made the decision not to call Larsen as an expert witness at the second trial because the main points sought to be established by his testimony were already presented to the jury during its cross-examination of the plaintiff's three experts. The Township contends that the instruction was improperly given because it had a valid reason not to call Larsen and because Larsen's opinions were not adverse to the Township.

The "missing witness" instruction tells the jury that it may infer that the testimony of the witness would be adverse to the party failing to offer it when: (1) the witness was under the control of the party; (2) the witness was not equally available to the other party; (3)

a reasonably prudent person under the same or similar circumstances would have produced the witness; and (4) no reasonable excuse for the failure to call the witness has been shown. Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1989); *Taylor v. Kohli*, 162 Ill. 2d 91, 97, 642 N.E.2d 467, 469 (1994). It is true that a missing witness instruction is not warranted where the witness's testimony would merely have been cumulative. See *Wilkerson v. Pittsburgh Corning Corp.*, 276 Ill. App. 3d 1023, 1029, 659 N.E.2d 979, 983 (1995). However, in *Wilkerson*, the court found the instruction should not have been given because the testimony of the expert witnesses the defendants failed to call would have been cumulative of the favorable testimony given by the defendants' other expert. *Wilkerson*, 276 Ill. App. 3d at 1028-30, 659 N.E.2d at 983-84. Here, the Township is arguing that it did not call Larsen as a witness because his testimony would have been cumulative of the generally adverse testimony of the plaintiff's experts. Based on our review, we do not find the defendant's argument to be persuasive.

A missing witness instruction was held properly given when the expert who did not testify at trial was listed as the defendants' expert and was deposed and where the defendants had previously obtained a continuance of the trial to enable the expert to testify. *Ryan v. E.A.I. Construction Corp.*, 158 Ill. App. 3d 449, 462-63, 511 N.E.2d 1244, 1253 (1987). In addition, a missing witness instruction may be appropriate if no notice is given to the opposing side that the expert will not be called. See *Taylor*, 162 Ill. 2d at 97-98, 642 N.E.2d at 469-70. The decision to instruct the jury as to the adverse inference of missing witnesses is within the sound discretion of the trial court. *Simmons v. University of Chicago Hospitals & Clinics*, 162 Ill. 2d 1, 7, 642 N.E.2d 107, 110 (1994).

From all the circumstances presented here, we find the trial court could have reasonably concluded that the Township decided not to call Larsen as a witness because his testimony would not have been favorable to the Township. See *Natalino v. JMB Realty Corp.*, 277 Ill. App. 3d 270, 280, 660 N.E.2d 138, 145 (1995). Also, the Township failed to notify the plaintiff that Larsen would not be called to testify. As a result, the trial court did not abuse its discretion when it gave the missing witness instruction.

■ Finally, the Township argues that the trial court abused its discretion when it allowed Paul Box to give an expert opinion regarding the condition of Eagle Lake Road. Box testified that his area of expertise was "planning, design, operation or maintenance of streets, highways and parking lots." He went to the scene of the accident and made observations on August 16, 1991, shortly after the accident oc-

64

curred. Illinois favors the permissive use of expert testimony in all types of cases where the jury would be aided in its understanding of the facts. *Ryan*, 158 Ill. App. 3d at 461, 511 N.E.2d at 1252. From our review, we determine that the trial court properly allowed Box to testify regarding his opinions.

## CONCLUSION

For the reasons indicated, the judgment of the circuit court of Will County is affirmed.

Affirmed.

LYTTON and MICHELA, JJ., concur.