SAMANTHA WROBEL *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (3rd Division)    No. 1—99—2867

Opinion filed December 27, 2000.

John J. Dwyer, Jr., of Chicago, for appellants.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Joseph H. Kim, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

This action was brought by plaintiffs, Samantha Wrobel and Kim Borias, to recover damages for personal injuries sustained as result of an automobile accident occurring on a state highway maintained by defendant, the City of Chicago (the City). The accident in question was allegedly caused when a third party, who is not a party to this appeal, lost control of his vehicle after striking a pothole in the roadway, and the vehicle veered into oncoming traffic in which plaintiffs were traveling. Plaintiffs appeal the order of the circuit court entering summary judgment in favor of the City on the ground that it was immunized from liability pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2—201 (West 1998)). For the following reasons, we affirm.

Plaintiffs were injured on January 14, 1997, when the vehicle that Wrobel was operating and in which Borias was a passenger collided with a vehicle being operated by Joseph Bosh on the 7300 block of South Kedzie Avenue in Chicago. Immediately before the accident, plaintiffs were traveling south on Kedzie, while Bosh was traveling north. Bosh claimed the accident occurred when his vehicle careened out of control into oncoming traffic after striking a pothole in the road. Bosh did not see the pothole in question before the crash, but upon returning to the immediate area of the accident at some later unspecified date, he observed a four-foot by six-foot depression in the road, which had been patched over. Bosh identified this depression as the pothole that caused his vehicle to veer out of control.

The 7300 block of South Kedzie is a state highway owned by the State of Illinois. Pursuant to a formal agreement with the state, the City receives state funds to perform maintenance work, including pothole repair, on the area of Kedzie involved in this case, as well as numerous other stretches of state highways within its limits. The record materials show that City workers had repaired potholes in the 7300 block of South Kedzie on January 10, 1997, four days before the accident. City worksheets reveal that the crew conducting repairs on January 10 was headed by foreman Michael Colianne.

During the winter months, crews are deployed by the City to canvass roadways under the City's maintenance and fill potholes in need of repair. These crews generally consist of a foreman, a raker, a roller, and two laborers. A supervisor with the asphalt division of the City's department of transportation coordinates the crew foremen and

specifies the roadway areas where each crew will conduct pothole repairs. Each foreman then plans the route the crew will undertake through the daily grid and supervises the crew members during their work. The foreman is typically not involved in the physical work involved in repairing any pothole.

The particular asphalt mixture used by the City to repair potholes depends on the time of the year during which the repair efforts are undertaken. In warmer weather, the City fills potholes with a "hot mix." As was explained by various City workers, a hot mixture forms a durable and a relatively long-lasting patch. In colder weather, however, the City uses a "cold mix," which is not as durable and dependable as a hot mixture. Depending on a number of various extraneous factors occurring after its application, such as the weather, traffic patterns and frequency of plowing, a cold mix patch may fail quite rapidly. The record testimony of several foremen and crew workers demonstrates that the City elects to utilize a cold mixture instead of a hot mix in winter weather because a hot mixture will typically settle during transportation due to the low temperatures and, as a consequence, is generally unusable. Due to this situation, the City employs cold mixtures in the winter as a temporary fix and then later uses the more durable hot mix when the weather permits.

The manner in which the cold mixture is applied in winter differs among the various repair crews. In particular part, the crews do not follow any uniform approach of handling asphalt debris and water within a pothole to be repaired. Some crews make no attempt to remove loose asphalt and moisture, particularly water, from a pothole before a cold mixture is applied, while other crews undertake such efforts. For instance, Michael Colianne stated the workers under his supervision specifically attempt to remove residual asphalt, snow, ice, and water from a pothole "as much as possible" before applying a cold mixture. Colianne explained the presence of loose asphalt and moisture will adversely affect the adhesive quality of the patch, and he stated that such removal efforts are necessary to ensure a durable repair.

The affidavit of Boris Dragunsky, a licensed engineer with a doctorate degree in construction materials technology, was submitted by plaintiffs to show that Colianne's practice is the proper method of pothole repair. According to Dragunsky, substrate preparation is essential for effective pothole repair. Dragunsky explains that the presence of moisture or water in the substrate will insure the rapid failure of any repair, and that the mixing of old asphalt aggregate with a cold mix will similarly contribute to a rapid deterioration of the patch. Dragunsky maintains that effective repair of a pothole with use of a cold mix requires removal of all moisture, water and residual asphalt aggregate from the pothole.

Plaintiffs' theory of negligence against the City is not entirely clear. Plaintiffs assert that in light of the City's documented repair efforts, no open and unrepaired potholes, especially one measuring four by six feet, presumably existed in the 7300 block of South Kedzie at the conclusion of the work day on January 10, 1997. Plaintiffs maintain the pothole purportedly struck by Bosh on January 14, 1997, must then have developed within the four-day period preceding the accident. Plaintiffs claim that "the rapid appearance of the condition gives rise to an inference that a prior repair failed rapidly" and "that, in turn, gives rise to an inference that the repairs were done improperly." According to plaintiffs, the improper repair by the workers ensured the rapid failure of the patch and consequently caused the dangerous condition confronted by Bosh.[1]

We glean from plaintiffs' assertions two distinct theories of liability. First, plaintiffs seem to claim that the laborers working under Colianne's supervision on January 10, 1997, failed to remove an adequate amount of residual asphalt and moisture from the pothole that was struck by Bosh before applying the cold mix compound. In an apparent alternative theory, plaintiffs seem to contend that the same workers wholly failed in the first instance to follow the application procedure prescribed by Colianne and made no attempt to remove any loose asphalt or moisture.

■ The purpose of summary judgment under section 2—1005 of the Code is to determine whether there exist any genuine issues of material fact between the parties. *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 979, 684 N.E.2d 816, 820 (1997). Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with any affidavits, present no issue of material fact and show that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Benamon v. Soo Line R.R. Co.*, 294 Ill. App. 3d 85, 87, 689 N.E.2d 366, 369 (1997). Our review of an

---

[1]Plaintiffs originally alleged the City was negligent by: (1) failing to inspect the 7300 block of South Kedzie for the existence of the pothole that Bosh's vehicle struck; (2) to the extent such an inspection was made, failing to conduct said inspection in a careful and reasonable manner so as to discover the pothole; (3) failing to repair or remedy the pothole; and (4) failing to warn motorists traveling on Kedzie of the pothole's presence. Plaintiffs acknowledge certain City crews were deployed during January 1997 to search out potholes for repair and that crews on January 10, 1997, specifically discovered the pothole at issue in this case. By their acknowledgments, plaintiffs have conceded that the City could not have breached the first two duties claimed in the complaint. Plaintiffs further conceded in the circuit court that the City had no duty to warn under the circumstances.

order granting summary judgment in favor of a party is conducted *de novo* (*Benamon*, 294 Ill. App. 3d at 88, 689 N.E.2d at 369), and we will construe all pleadings, depositions and affidavits in a light most favorable to the nonmoving party. *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 613-14, 663 N.E.2d 1, 7 (1995).

■ In its motion for summary judgment, the City argues, in relevant part, it is immune from the asserted negligence of its workers under section 2—201 of the Act. That provision provides:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1998).

By virtue of section 2—109 of the Act, immunity is granted to a public entity for the acts or omissions of its employees where the employees are not liable. 745 ILCS 10/2—109 (West 1998).

As explained by our supreme court, the immunity provided by section 2—201 extends to any employee who holds either a position involving the determination of policy or a position involving the exercise of discretion. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341, 692 N.E.2d 1177, 1181 (1998). For immunity to attach, though, the complained-of injuries must have resulted from an act or omission by the employee in determining policy and exercising discretion. The act or omission giving rise to the injuries must be both a determination of policy and an exercise of discretion. *Harinek*, 181 Ill. 2d at 341, 692 N.E.2d at 1181.

The term "policy" when used in relation to the decisions of a public entity have been defined as " 'those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Harinek*, 181 Ill. 2d at 342, 692 N.E.2d at 1181, quoting *West v. Kirkham*, 147 Ill. 2d 1, 11, 588 N.E.2d 1104 (1992); see also *Harrison v. Hardin County Community Unit School District No. 1*, 313 Ill. App. 3d 702, 706, 730 N.E.2d 61, 65 (2000) ("policy determination" is one requiring "considered evaluation and judgment by a governmental unit, utilizing its own particular expertise, to formulate principles and procedures directed toward the achievement of common and general goals for the community's benefit" during which "several factors, including the public benefit, the practicability of the plan or procedure, and the best methods to be employed considering available resources, costs, and safety must be considered").

Acts deemed "discretionary" have been defined as those that are

unique to a particular public office (*Snyder v. Curran Township*, 167 Ill. 2d 466, 474, 657 N.E.2d 988, 993 (1995)) and involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed. *D.M. v. National School Bus Service, Inc.*, 305 Ill. App. 3d 735, 739, 713 N.E.2d 196, 200 (1999); *Bonnell v. Regional Board of School Trustees*, 258 Ill. App. 3d 485, 489, 630 N.E.2d 547, 549 (1994).

■ Plaintiffs' first theory of liability focuses on the adequacy of the efforts undertaken by Colianne's workers in removing residual asphalt and moisture from the pothole at issue in this case. Plaintiffs specifically suggest the workers failed to extract a sufficient amount of asphalt and moisture from the depression before applying the cold mixture and, as a result, compromised the durability of the patch. Under the circumstances presented, we find that section 2—201 of the Act cloaks the City with immunity under this theory.

Contrary to plaintiffs' contention, the laborers in Colianne's crew hold positions that require them to both determine policy and exercise discretion. These workers are directed by Colianne to remove "as much" loose asphalt and existing moisture in a pothole "as possible" before applying the cold mixture. While they are obligated to undertake such measure pursuant to the express directive of their foreman, the workers enjoy discretion in determining how much asphalt and moisture should be actually extracted and whether that amount is indeed adequate to ensure a durable patch.

The decisions of the workers in this regard can also fairly be characterized as policy determinations. When confronted with a particular stretch of roadway, the workers must necessarily be concerned with the efficiency in which they prepare any potholes for repair. Specifically, the workers must allocate their time and resources among the various potholes that will be repaired, and they must ensure that not too much time is dedicated to pothole preparation. The more time and resources the workers devote to preparing potholes for a patch, the less time and resources they have available to repair the other potholes existing throughout their daily grid.

For the same reasons discussed above, the extent of the workers' removal efforts represent both a determination of policy and an exercise of discretion. The degree to which a pothole should be prepared, and specifically how much loose asphalt and moisture will be removed, is a matter of a worker's personal judgment, and encompassed within that judgment are the policy considerations of time and resource allocation during a given workday.

Plaintiffs strenuously argue that the physical acts of the workers are not discretionary but rather ministerial. Only discretionary acts

are extended immunity under the Act, and a public entity will not be protected for the acts of its agents that are ministerial in character. The classification of acts as either discretionary or ministerial escape any precise formulation and must be made on a case-by-case basis in light of the particular facts and circumstances presented. *Snyder*, 167 Ill. 2d at 474, 657 N.E.2d at 992-93.

Despite the *ad hoc* nature of this determination, the law deems discretionary acts as those that are unique to a particular public office (*Snyder*, 167 Ill. 2d at 474, 657 N.E.2d at 993), and involve the making of a decision about whether or how to perform a particular act following the exercise of personal deliberation and judgment. *D.M.*, 305 Ill. App. 3d at 739, 713 N.E.2d at 200; *Bonnell*, 258 Ill. App. 3d at 489, 630 N.E.2d at 549.

In contrast, ministerial acts are those that a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act. *Snyder*, 167 Ill. 2d at 474, 657 N.E.2d at 993. That is, ministerial acts are those acts that are " 'absolute, certain and imperative, involving merely the execution of a set task' " so that " 'nothing remains for judgment or discretion.' " *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 194, 680 N.E.2d 265, 272 (1997), quoting *City of Chicago v. Seben*, 165 Ill. 371, 377-78, 46 N.E. 244 (1897).

The acts and omissions complained of by plaintiffs cannot be classified as ministerial under the facts and circumstances of this case. As discussed above, the workers enjoy the discretion to determine how much residual asphalt and moisture to remove from potholes. The plaintiffs correctly note that the workers have no discretion to decide whether or not to follow the preparation approach adopted by Colianne and are under the obligation to attempt to remove as much asphalt and moisture as possible. However, the amount of asphalt and moisture actually removed and determined to be sufficient is left to the personal judgment of the workers. As noted by our supreme court, depending on the circumstances of the particular case, an act that might be considered a repair can be a discretionary matter. *Chicago Flood Litigation*, 176 Ill. 2d at 195, 680 N.E.2d at 273. Plaintiffs' assertion would find stronger support if Colianne directed his workers to remove *all* loose asphalt and existing moisture from a pothole. But that is not the situation presented by the record. Rather, by virtue of the actual directive given by Colianne, the workers retained a degree of discretion in performing their duties. It is this fact that primarily distinguishes the instant matter from that presented in *Herman v. Will Township*, 284 Ill. App. 3d 53, 671 N.E.2d 1141 (1996), upon which plaintiffs place heavy reliance.

Plaintiffs' alternative theory of liability similarly concerns the omissions of the workers and focuses on the workers' initial efforts to undertake the measures prescribed by Colianne. According to this theory, the workers under Colianne's supervision did not make any attempt to remove residual asphalt and moisture from the pothole at issue. As plaintiffs claim, section 2—201 of the Act does not afford the City immunity under this theory since the workers had no discretion in following Colianne's prescribed method of preparing potholes for repair. Once Colianne exercised his discretion and determined that residual asphalt and moisture should be removed, to the extent possible, the workers' initial effort to undertake such measures became ministerial and they were under the obligation to follow Colianne's directives. However, notwithstanding the Act's inapplicability to plaintiffs' alternative theory, we believe summary judgment in favor of the City is nonetheless proper because plaintiffs have failed to present any evidence that would entitle them to a finding in their favor.

To prevail on their negligence claim, plaintiffs are required to prove the existence of duty on the part of the City, the City's breach of that duty, and injury proximately resulting from that breach. *Wojdyla v. City of Park Ridge*, 209 Ill. App. 3d 290, 293, 568 N.E.2d 144, 145 (1991). Even though plaintiffs, as the nonmovants, were not required to prove their case at the summary judgment stage, they had the burden of presenting some factual basis that would arguably entitle them to a judgment. *Geraghty v. Continental Western Life Insurance Co.*, 281 Ill. App. 3d 669, 678, 667 N.E.2d 510, 516 (1996). If from the materials in the record a plaintiff fails to establish an element of her cause of action, summary judgment is proper. *Geraghty*, 281 Ill. App. 3d at 678, 667 N.E.2d at 516. Thus, for plaintiffs to survive summary judgment, they had to present some evidence showing a breach on the part of the City, namely, that the workers in Colianne's crew wholly failed to make any attempt to remove residual asphalt and moisture from the pothole identified by Bosh. While the question of whether the City breached its duty to the plaintiffs is normally a factual one, it may properly be resolved by this court as a legal matter when the evidence, such as in this case, presents no genuine issue of material fact regarding that subject. *Nowak v. Coghill*, 296 Ill. App. 3d 886, 892, 695 N.E.2d 532, 537 (1998).

Plaintiffs concede the record is devoid of any direct evidence establishing that the workers did not undertake the required repair measures. Rather, plaintiffs seek to establish the requisite breach circumstantially. The law is well established that a party may establish a defendant's negligence through the use of circumstantial evidence. *Nowak*, 296 Ill. App. 3d at 896, 695 N.E.2d at 539. Circumstan-

tial evidence is the proof of certain facts and circumstances from which a fact finder may infer other connected facts that usually and reasonably follow according to the common experience of mankind. *Parker v. Illinois Masonic Warren Barr Pavilion*, 299 Ill. App. 3d 495, 500, 701 N.E.2d 190, 193 (1998). Circumstantial evidence may be used to establish facts necessary to a claim, but it is sufficient only when it shows the probability of the existence of the fact. The circumstantial facts must be of such a nature and so related as to make the conclusion reached the more probable, as opposed to possible, one. *Block v. Lohan Associates, Inc.*, 269 Ill. App. 3d 745, 757, 645 N.E.2d 207, 215 (1993); *Stonitsch v. Laredo Construction Co.*, 221 Ill. App. 3d 902, 905, 583 N.E.2d 49, 52 (1991).

Here, plaintiffs have not presented sufficient circumstantial evidence to establish that Colianne's workers failed in the first instance to remove loose asphalt and moisture from the pothole in question and apply a cold mix patch. The record materials, including the affidavit of Dragunsky, do not demonstrate the probability of the inference plaintiffs seek to draw. While it may be reasonable to infer that the pothole in question was repaired by the workers on January 10, 1997, by use of a cold mix patch and that this patch failed before or on January 14, the record does not show that it is more probable than not that this patch broke down as a result of the workers' failure to make efforts to remove residual asphalt and moisture. For that matter, assuming section 2—201 of the Act is inapplicable to plaintiffs' first theory of liability, the record likewise is insufficient to show the probability of the proffered inference that the workers failed to remove an adequate amount of asphalt and moisture from the pothole. These inferences may be possible, but they are not probable and thus are insufficient as a matter of law.

Further, the inferences sought by plaintiffs are missing a critical link. To raise a reasonable inference that the workers either failed to make efforts to remove asphalt and moisture from the pothole or undertook such efforts but performed them inadequately, plaintiffs must have presented circumstantial evidence showing that it is more probable than not that the pothole at issue broke down due to the presence of asphalt and moisture. As explained by Dragunsky, the presence of asphalt and moisture may cause the failure of a cold mix patch. Yet, the record also demonstrates that a cold mix patch may break down for various other reasons, including traffic patterns and weather conditions. The evidence in the record merely establishes the possibility that the presence of residual asphalt and moisture caused the failure of the pothole's repair in this case. In fact, the record is devoid of any evidence establishing, or raising a reasonable inference,

that the pothole in question contained loose asphalt and/or moisture on January 10, 1997.

## CONCLUSION

For the foregoing reasons, the circuit court's entry of summary judgment in favor of the City and against plaintiffs is affirmed.

Affirmed.

HALL, P.J., and BURKE, J., concur.