NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 200190-U

NO. 4-20-0190

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 31, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| TOMMY DYCUS, BRANDY DYCUS, SHAWN DOAN and APRIL MANNING, | ) ) | Appeal from Circuit Court of |
| Plaintiffs-Appellants, | ) | Edgar County |
| v. | ) | No. 18L15 |
| THE COUNTY OF EDGAR, ILLINOIS, | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Mitchell K. Shick, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding the circuit court properly denied plaintiffs' motions for partial summary judgment and granted defendant's motion for summary judgment where defendant is entitled to discretionary immunity under sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2016)).

¶ 2    Plaintiffs, Tommy Dycus, Brandy Dycus, Shawn Doan, and April Manning, filed a first amended complaint against defendant, County of Edgar, Illinois, for personal injuries stemming from a May 2018 accident in which plaintiffs' two motorcycles, each with a passenger, lost control and crashed after encountering a road repair patch resulting from a culvert replacement on Edgar County Road 1650 N.  The amended complaint alleged defendant was negligent in its (1) repair of the road, (2) inspection of the road, and (3) failure to post signs warning of the road repair site.

¶ 3　　　　Defendant filed a motion for summary judgment, arguing (1) it was absolutely immune from liability under section 3-104 of the Local Government and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-104 (West 2016)) for any failure to provide warning signage on the road, (2) it was absolutely immune from liability under sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2016)) for its discretionary decisions in improving, maintaining, repairing, and inspecting the road where the culvert replacement took place, and (3) plaintiff drivers were greater than 50% contributorily negligent.

¶ 4　　　　Plaintiffs filed two motions for partial summary judgment, arguing defendant was not entitled to discretionary immunity. Subsequently, the circuit court denied in part and granted in part defendant's motion for summary judgment and denied plaintiffs' partial motions for summary judgment. The circuit court denied the portion of defendant's motion for summary judgment asserting plaintiff drivers were contributorily negligent.

¶ 5　　　　Plaintiffs appeal the circuit court's denial of their motions for partial summary judgment and the court's granting, in part, of defendant's motion for summary judgment. On appeal, plaintiffs argue defendant is not entitled to discretionary immunity under sections 2-109 and 2-201 of the Tort Immunity Act. Plaintiffs assert defendant failed to meet its burden of proof to establish its road crew made policy determinations and exercised discretion when completing trench infill compaction work during the culvert replacement, creating the circumstances that resulted in the injuries to plaintiffs.

¶ 6　　　　　　　　　　　　I. BACKGROUND

¶ 7　　　　The following relevant facts are drawn from the parties' depositions.

¶ 8　　　　　　　　　　　A. May 2018 Accident

¶ 9        On Sunday, May 6, 2018, plaintiffs in a group of three motorcycles went out for a motorcycle ride. Plaintiffs started their ride from the Dycus residence in Dana, Indiana. Plaintiff Tommy Dycus drove a motorcycle with his wife, plaintiff Brandy Dycus, as his passenger. Plaintiff Shawn Doan drove another motorcycle with his wife, plaintiff April Manning, as a passenger. Troy Farr drove the third motorcycle. Dycus's motorcycle led the group with Farr second in line behind the Dycus motorcycle and to the right. Doan rode directly behind the Dycus motorcycle and behind and to the left of the Farr motorcycle.

¶ 10       The accident occurred between 4 p.m. and 5 p.m. Shawn testified it was light outside at the time of the accident. As the group approached Edgar County Road 1650 N., the group observed a depression in the road. Specifically, the group observed gravel across the road, which stood out against the road's black pavement.

¶ 11       Tommy testified the front tire of his motorcycle hit the area of the gravel, causing him to lose control of the motorcycle. When Shawn observed Dycus's brake light come on, he swerved his motorcycle to the left to avoid hitting the Dycuses. As Shawn went to the left, his motorcycle entered the depression in the road and ultimately "barrel rolled" when the back end of the motorcycle went out from underneath him. Plaintiffs testified they sustained injuries as a result.

¶ 12                      B. The Culvert Replacement Project

¶ 13                         1. *Dirk Mohon*

¶ 14       On Wednesday, May 2, 2018, a few days before the accident, defendant undertook a culvert replacement project on County Road 1650 N. in Edgar County. Dirk Mohon, the Assistant County Engineer, made the decision to replace the culvert because the pipe was caving in. Mohon worked at the Edgar County Highway Department for 35 years. Mohon

developed the method defendant uses to replace culverts. Defendant replaced around 30 to 40 culverts in the year before the accident.

¶ 15        Edgar County Road 1650 N. is an oil and chip road traveled by 75 or fewer vehicles per day, and oil and chip roads have numerous uneven surfaces including depressions and dips; the roads heat, thaw, and settle and there is loose rock and gravel scattered on oil and chip roads.

¶ 16        Mohon chose the method used to replace the culvert and the trench infill material (CA6 crushed aggregate) used in the culvert replacement. Four Edgar County Highway Department employees performed the culvert replacement.

¶ 17        Mohon described the procedure the road crew used to perform the culvert replacement. To start, the road crew cuts out the existing culvert pipe. Then, they excavate to remove the failing pipe. Next, they set grade in the bottom of the excavated site, put the new pipe in, cover the pipe with rock and tamp it down, fill the hole again and tamp it again, repeating the process as many times as necessary. After putting each layer or lift of gravel in, the road crew compacts the infill material. There is no recommended procedure in determining the depth of the lifts of gravel and no set or prescribed depth. The road crew determines the depth of each layer of gravel laid, how many layers to put in, and how many times to compact the gravel. The road crew makes decisions using their judgment and experience when performing the road work and filling the lifts. For this culvert replacement project, in addition to tamping down each layer after the infill material was to grade, the road crew compacted the material by rolling a dump truck weighing 45,000 pounds over the top of the road surface multiple times.

¶ 18        On Thursday, May 3, 2018, Mohon went to the culvert replacement site to inspect the work and found it satisfactory. Any settlement of the site occurred between Thursday and

Sunday, and the highway department does not typically have crews out on the weekends. Mohon also inspected the site immediately after the Sunday, May 6, 2018, accident and found it to be satisfactory. Mohon was the only person to actually measure the depth of the depression, and he stated the depression depth ranged from zero to two inches.

¶ 19 On Monday, May 7, 2018, an employee of defendant who applied an asphalt cold patch to part of the depression was unable to apply asphalt to the entire depression because it was not deep enough to hold the patch. Mohon opined that if the road crew applied the cold patch immediately after installing the culvert on May 2, 2018, there still would have been a depression in the roadway when the accident occurred because the asphalt would have settled along with the infill material. Mohon made the decision to wait to apply the patch until after settlement to avoid having to patch multiple times and to conserve county resources.

¶ 20 2. *Christopher Billing*

¶ 21 Plaintiffs' civil engineering expert, Christopher Billing, opined there are four acceptable methods for culvert replacement. According to Billing, defendant used the "dump" method which is the least expensive of the four methods. Billing admitted the method chosen by defendant was permissible but indicated the method produces more settlement than other methods.

¶ 22 Billing recognized the techniques for culvert replacement on rural roads that are sparsely travelled are different than for interstate highways. Billing acknowledged governments can be limited by budget considerations and those considerations affect the means and methods chosen for culvert replacement projects.

¶ 23 Billing agreed he criticized the condition of the roadway at the time of the accident not due to the condition itself but rather because the road conditions could not be

perceived by a motorcyclist in time to react accordingly. Billing criticized defendant's failure to install a sign warning of the road condition. Billing viewed photographs and observed a color differentiation on the road in question, where part of the road was lighter in color. Defendant's counsel asked if the color differentiation "would give an indication to oncoming motorists that there's a potential change in the road surface at that area[.]" Billing stated, "That could." Billing also stated, "It certainly would be a cause to have an approaching motorist take a more concerted look at this situation."

¶ 24 When asked how often a road crew should inspect the site after completion of the work, Billing stated,

"Well, I would have to think that the road district crew would have a better idea, because if this is the methodology that they put in, they should know how quickly their trenches tend to settle. And so if because of the size of the trench and maybe the depth of the trench, and maybe exactly how they did put the stone in, that certainly may vary from location to location, so they would know if this is something that is an extremely great job they did, or one of the poorer jobs they did, or an average job they did."

Billing recognized the road crew must exercise their discretion to determine the frequency of site inspections.

¶ 25 C. Procedural History

¶ 26 In July 2018, plaintiffs filed a complaint against defendant for personal injuries sustained in the May 2018 accident in which plaintiffs' two motorcycles, each with a passenger, lost control and crashed after encountering a temporary gravel road patch left after a culvert

- 6 -

replacement on Edgar County Road 1650 N. Plaintiffs alleged defendant was negligent where it failed to maintain the road in a safe condition for motor vehicle travel.

¶ 27 In October 2018, defendant filed an answer, affirmative defenses, and a counterclaim to plaintiffs' complaint. In relevant part, defendant asserted it was immune from liability from plaintiffs' claims under section 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2016)) because defendant and its employees' decisions regarding whether to and how to repair the road in question were discretionary. Defendant also asserted it was immune from liability under section 3-104 of the Tort Immunity Act (745 ILCS 10/3-104 (West 2016)) where "[a] local public entity is not liable for an injury caused by the failure to initially provide regulatory traffic control devices, stop, signs, or any other traffic regulating or warning sign."

¶ 28 Subsequently, plaintiffs filed a motion for partial summary judgment, arguing defendant was not entitled to discretionary immunity under section 2-201 of the Tort Immunity Act. Specifically, plaintiffs argued discretionary immunity did not apply to road repair work creating an unsafe condition. In November 2018, defendant filed its response in opposition to plaintiffs' motion for partial summary judgment.

¶ 29 In February 2019, plaintiffs filed a first amended complaint against defendants for personal injuries sustained in the May 2018 accident, alleging defendant was negligent in its (1) repair of the road, (2) inspection of the road, and (3) failure to post signs warning of the road repair site.

¶ 30 In May 2019, plaintiffs filed a second motion for partial summary judgment, arguing defendant was not entitled to discretionary immunity where defendant's road repair work constituted routine work or ministerial action.

¶ 31 In January 2020, defendant filed a motion for summary judgment, arguing (1) it was absolutely immune from liability under section 3-104 of the Tort Immunity Act (745 ILCS 10/3-104 (West 2016)) for any failure to provide warning signage on the road, (2) it was absolutely immune from liability under sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2016)) for its discretionary decisions in improving, maintaining, repairing, and inspecting the road where the culvert replacement took place, and (3) plaintiff drivers were more than 50% contributorily negligent.

¶ 32 In February 2020, plaintiffs filed a response to defendant's motion for summary judgment. Subsequently, defendant filed a reply memorandum in support of its motion for summary judgment. Also, in February 2020, the circuit court heard oral argument on the motions for summary judgment.

¶ 33 In March 2020, the circuit court entered a written order denying plaintiffs' motions for partial summary judgment and granting in part and denying in part defendant's motion for summary judgment. The court found defendant was entitled to absolute immunity for its discretionary decisions concerning the culvert replacement project and "therefore [s]ection 2-201 immunity applies as a matter of law." Specifically, the court stated, "defendant in this case has met its burden establishing that the acts of Assistant Engineer Mohon and the road crew in the design and completion of the culvert replacement project in question were discretionary decisions performed by policy-making employees of [defendant.]" The court also held defendant was entitled to immunity pursuant to section 3-104 of the Tort Immunity Act (745 ILCS 10/3-104 (West 2016)) for any failure to place warning signs at the road repair site. The court denied defendant's motion for summary judgment on the issue of whether plaintiff drivers were greater than 50% contributorily negligent as a matter of law.

¶ 34    This appeal followed.

¶ 35                                    II. ANALYSIS

¶ 36    Plaintiffs appeal both the circuit court's denial of their motions for partial summary judgment and the granting, in part, of defendant's motion for summary judgment.  On appeal, plaintiffs argue defendant is not entitled to discretionary immunity under sections 2-109 and 2-201 of the Tort Immunity Act.  Plaintiffs assert defendant failed to meet its burden of proof to establish its road crew made policy determinations and exercised discretion when completing trench infill compaction work during the culvert replacement, creating the circumstances which resulted in injuries to plaintiffs.  Defendant disagrees and argues the circuit court's judgment should be affirmed where it is entitled to immunity under sections 2-109 and 2-201 of the Tort Immunity Act because Mohon and the road crew exercised discretion in replacement of the culvert and the means and methods used to replace the culvert.

¶ 37    At issue in this appeal is whether defendant is entitled to immunity from liability pursuant to sections 2-109 and 2-201 of the Tort Immunity Act.  "[T]he Tort Immunity Act governs whether and in what situations local governmental units are immune from civil liability."  *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 340, 692 N.E.2d 1177, 1180 (1998).

¶ 38    Section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2016)) provides, "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  Under section 2-109 of the Tort Immunity Act (745 ILCS 10/2-

- 9 -

109 (West 2016)), "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

¶ 39          The Illinois Supreme Court explained the immunity provided by section 2-201 of the Tort Immunity Act extends to any employee who serves in " 'a position involving the determination of policy or the exercise of discretion.' " *Harinek*, 181 Ill. 2d at 341 (quoting section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 1994))).  For immunity to attach, the complained of injuries must have resulted from the employee's " 'act or omission in determining policy when acting in the exercise of such discretion.' " *Id.*  "The act or omission giving rise to the injuries must be both a determination of policy and an exercise of discretion." *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 394, 742 N.E.2d 401, 405 (2000) (citing *Harinek*, 181 Ill. 2d at 341).

¶ 40          Policy determinations are defined as " 'those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Monson v. City of Danville*, 2018 IL 122486, ¶ 30, 115 N.E.3d 81 (quoting *Harinek*, 181 Ill. 2d at 342).  "Discretionary decisions are 'unique to a particular public office' ([*Snyder v. Curran Township*, 167 Ill. 2d 466, 474, 657 N.E.2d 988, 993 (1995)]), and 'involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed.' " *Monson*, 2018 IL 122486, ¶ 30 (quoting *Wrobel*, 318 Ill. App. 3d at 394-95).

¶ 41          "In contrast to discretionary and policy decisions, a public entity's ministerial acts are not immune from liability under the [Tort Immunity] Act." *Id.*  "Consequently, the negligent performance of ministerial acts can subject a municipality to tort liability." *Id.*  "Ministerial acts are 'those which a person performs on a given state of facts in a prescribed

manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.' " *Id.* (quoting *Snyder*, 167 Ill. 2d at 474).

¶ 42        Immunity under section 2-201 of the Tort Immunity Act must be decided on a case-by-case basis and is absolute, covering both negligent and willful and wanton conduct. *Id.* ¶ 29. We review the circuit court's summary judgment rulings *de novo*. *Id.* ¶ 12.

¶ 43        Before delving into our immunity analysis, we address plaintiffs' complaint regarding the absence of testimony from any specific road crew member involved in the culvert pipe replacement. According to plaintiffs, the defendant could not meet its burden to show the road crew exercised discretion by offering only testimony from Mohon, who lacked personal knowledge of the actions taken by the road crew. Specifically, plaintiffs argue defendant's failure to offer testimony from a road crew member deprived the circuit court of the evidence necessary to decide whether the crew members acted with discretion. We decline to adopt plaintiffs' view.

¶ 44        Here, Mohon offered no testimony regarding the specific actions undertaken by the road crew. Thus, Mohon did not speak to actions undertaken of which he had no personal knowledge. Instead, Mohon offered testimony regarding the culvert pipe replacement method he developed and the steps involved in that method. Importantly, Mohon also offered testimony about what aspects of the method required—because Mohon provided no specific instructions— the road crew to exercise discretion in replacing the culvert. Considering the actual testimony provided by Mohon, we find no fault with the testimony or the circuit court's consideration of the testimony in reaching its decision.

¶ 45        Plaintiffs argue the circuit court erred when it granted defendant's motion for summary judgment and denied their partial summary judgment motions where defendant is not

entitled to immunity under sections 2-109 and 2-201 of the Tort Immunity Act because the road crew's actions in following Mohon's plans and directions in replacing the culvert constituted ministerial acts rather than discretionary or policy decisions. Plaintiffs cite *Herman v. Will Township*, 284 Ill. App. 3d 53, 671 N.E.2d 1141 (1996), in support of their argument.

¶ 46     In *Herman*, 284 Ill. App. 3d at 56-57, the appellate court concluded the township was not immune from liability pursuant to the Tort Immunity Act where there was no evidence the township exercised discretion at the various stages of work performed in upgrading a gravel road in accordance with Illinois Department of Transportation (IDOT) specifications. Specifically, the township improved the gravel road by putting on a new 10-inch layer of gravel. The IDOT plan included no gravel compaction requirement. *Id.* at 57. Following the improvements, the plaintiff was injured when he, while on his moped, drove over what he described as up to 4 inches of uncompacted gravel and injured himself. The court found the township's decisions constituted ministerial acts; thus, the township was not entitled to discretionary immunity. *Id.* at 59. We find *Herman* distinguishable.

¶ 47     First, we point out *Herman* is bereft of any discussion or analysis regarding policy determinations or the exercise of discretion. Instead, the case begins with the assumption that once a public entity begins work pursuant to a plan, it acts ministerially. We disagree that *Herman* should guide our analysis.

¶ 48     Here, the evidence showed Mohon chose the method used to replace the subject culvert and the material (CA6 crushed aggregate) used in the culvert replacement. However, unlike the road crew in *Herman*, this road crew then performed the culvert replacement using their discretion to determine the depth of each layer of gravel laid, how many layers to put in, and how many times to compact the gravel. *Herman* cites *Snyder* for the proposition that once a

public entity begins to carry out its plan to make a public improvement, it acts ministerially. However, in both *Herman* and *Snyder*, the public improvement undertaken involved specific plans or laws affording the public entity no discretion in how to go about the improvement. *Herman* involved work completed in accordance with IDOT specifications. *Snyder* involved the placement of a sign in violation of state law requiring placement of signs on a specific side of the road. Ultimately, we find *Herman* provides little guidance and, at any rate, is distinguishable from the matter before us.

¶ 49        On the other hand, defendant argues it is entitled to immunity under section 2-109 and 2-201 of the Tort Immunity Act where Mohon and the road crew determined policy and exercised discretion in replacing the culvert. Defendant cites *Wrobel*, 318 Ill. App. 3d 390, and *Doyle v. Village of Tinley Park*, 2018 IL App (1st) 170357, 115 N.E.3d 1069, in support of its argument.

¶ 50        In *Wrobel*, 318 Ill. App. 3d at 395, the appellate court affirmed the grant of summary judgment in favor of the City of Chicago based on section 2-201 immunity. The plaintiffs sued the City of Chicago for negligently repairing potholes in the roadway just four days before an accident injuring plaintiff. *Id.* at 393. The city repaired a pothole, but four days later, the hole reappeared. *Id.* at 391. Plaintiffs claimed the workers under foreman Colianne's supervision either failed to follow his directions and procedures or the procedure itself was inadequate to prevent the hole from reappearing. *Id.* at 393. The court held:

> "The acts and omissions complained of by plaintiffs cannot be
> classified as ministerial under the facts and circumstances of this
> case. As discussed above, the workers enjoy the discretion to
> determine how much residual asphalt and moisture to remove from

- 13 -

potholes.  The plaintiffs' [*sic*] correctly note that the workers have no discretion to decide whether or not to follow the preparation approach adopted by Colianne, and are under the obligation to attempt to remove as much asphalt and moisture as possible. However, the amount of asphalt and moisture actually removed and determined to be sufficient is left to the personal judgment of the workers.  As noted by our supreme court, depending on the circumstances of the particular case, an act that might be considered a repair can be a discretionary matter.  [Citation.] Plaintiffs' assertion would find stronger support if Colianne directed his workers to remove *all* loose asphalt and existing moisture from a pothole.  But that is not the situation presented by the record.  Rather, by virtue of the actual directive given by Colianne, the workers retained a degree of discretion in performing their duties.  It is this fact that primarily distinguishes the instant matter from that presented in [*Herman*], upon which plaintiffs placed heavy reliance."  (Emphasis in original.)  *Id.* at 396.

¶ 51        In *Doyle*, 2018 IL App (1st) 170357, ¶ 48, the appellate court determined the Village of Tinley Park was immune from liability under section 2-201 of the Tort Immunity Act, in its repair of a storm pipe and sinkhole on the plaintiffs' property.  Specifically, the court found "the village employed discretion at every step of the repair process, from the first work crew that visited the Doyles' house and had to decide what to do about the sinkhole, to the village manager who decided to approve the street pipe repair."  *Id.* ¶ 44.  The court rejected the plaintiffs'

contention that the village's actions in performing repairs were ministerial or "merely the execution of a set task." *Id.* ¶ 40. We find *Wrobel* and *Doyle* analogous to our case.

¶ 52        Here, defendant is entitled to immunity under sections 2-201 and 2-109 of the Tort Immunity Act where Mohon's and the road crew's actions constituted determinations of policy and an exercise of discretion. Mohon made decisions regarding the method, means, and material used for the culvert replacement. The road crew made decisions regarding the depth of each layer of gravel, how many layers to put in, and how many times to compact the gravel. Plaintiffs' expert, Billing, recognized the road crew must exercise their discretion to determine the frequency of inspections to the site based on the methodology they used to replace the culvert. Mohon inspected the site the day after the culvert replacement and found the road crew's work satisfactory. Further, Mohon inspected the site after the accident and found it again to be satisfactory.

¶ 53        Based on the record, the road crew followed the culvert replacement plan created by Mohon and exercised their discretion in compaction of the worksite. We agree with the circuit court where it determined, "defendant in this case has met its burden establishing that the acts of Assistant Engineer Mohon and the road crew in the design and completion of the culvert replacement project in question were discretionary decisions performed by policy-making employees of [defendant.]" Therefore, we find the circuit court properly denied plaintiffs' motions for partial summary judgment and granted, in part, defendant's motion for summary judgment where defendant is entitled to discretionary immunity under sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2016)), for its discretionary decisions concerning the culvert replacement project.

¶ 54                        III. CONCLUSION

- 15 -

¶ 55        For the reasons stated, we affirm the circuit court's judgment.

¶ 56        Affirmed.